## People's Bank v. Franklin Bank.

### (*Nashville.* December 31, 1889.)

1. BANKS AND BANKING. *Indorsement of forged check. Liability of indorser. Negligence.*

   A bank that has negligently cashed a forged check purporting to be drawn upon another bank, and has, upon its indorsement of that check, received payment of the drawee bank, is liable to the latter bank for the amount received, upon subsequent discovery that the check was forged.

   Cases cited and approved: Harris v. Bradley, 7 Yer., 310; 51 Md., 585; 117 U. S., 96, 112; 40 Ohio St., 628; 14 La. An., 458; 106 Mass., 441; 63 Tex., 610; 71 Ill., 439.

   Cited and distinguished: 4 Dall., 234; 10 Wheat., 333.

2. SAME. *Same. What is negligence in the indorsing bank.*

   That the indorser bank is unable to give the name of the person who presented the forged check, or to whom it was paid, or to assert with positiveness that it required identification of such party, is sufficient evidence of negligence to render it liable.

3. SAME. *Negligence of drawee bank.*

   The drawee bank will not be precluded from recovery in such case by reason of the fact that, relying upon the indorsement of the other bank, it paid the check without investigation as to its genuineness.

---

### FROM MONTGOMERY.

---

Appeal from Chancery Court of Montgomery County. GEO. E. SEAY, Ch.

STARK. & STARK for Complainant.

LEECH & SAVAGE for Respondent.

FOLKES, J.   Young was a depositor of the complainant bank. His name was forged to a check drawn on the complainant, payable to the order of one Morgan. Morgan's name was also forged as an indorser on the check. This check, with the forged name of Young, the maker, and of Morgan, the indorser, was presented to the defendant, the Franklin Bank, and was cashed or purchased by the defendant, and transmitted, after indorsement by the defendant, to the complainant bank by mail. The complainant bank had and kept an account with the defendant bank, and upon the receipt of the check passed the amount thereof to the credit of the defendant bank. The complainant bank was located and did business at Springfield, in the county of Robertson; the defendant bank was located and did business at Clarksville, in Montgomery County. The check which had been received by the complainant bank and passed to the credit of defendant bank, as above stated, on December 8, 1888, was ascertained, thirty-one days thereafter, to be a forgery. This discovery being made by the depositor, Young, when he came to examine his pass-book, together with the checks returned therewith. Thereupon, the complainant bank canceled the charge against Young, the depositor, and at once

notified the defendant bank of the forgery, and demanded that the same be made good by the defendant bank. Upon refusal, complainant filed this bill to recover the amount· of the check as having been paid by it through mistake upon the forged check, charging in the bill the facts above stated, and also the further fact that when presented the check · bore the indorsement of the defendant bank, and that upon the faith of such indorsement the complainant's teller accepted the check, and gave credit to the defendant bank with less careful scrutiny of the genuineness of the drawer's signature, by reason of the confidence reposed in the genuineness of the paper as evidenced by the indorsement of the defendant bank. The defendant answered the bill, admitting that it had received and cashed the check, as charged, and, stating that it was unable to furnish the name of the party, or parties, by whom the check had been presented, and to whom it had been paid by it, but presumed that it had required identification, but of this they do not remember. The allegations of the bill were sustained by the proof; but the Chancellor, being of opinion that the plaintiff should, at its peril, know the genuineness of the signature of its depositor, refused the relief prayed for, and dismissed complainant's bill, from which complainant has appealed, assigning errors.

The general rule undoubtedly is, that the bank has, at its peril, to know the genuineness of the

signature of its depositor; and if it pays a forged check, the loss must fall upon the bank and not upon the depositor, except in cases where the negligence of the depositor has induced or brought about the payment by the bank. This duty, with reference to the bank, may be said to be an exception to the general rule that money paid by mistake can be recovered, and to the general statement of another equally well-settled rule that the payment of a forged paper conveys no title; for it is. well settled that the deposit of a forged bill or base coin creates no indebtedness, although credited to the depositor's account, for the reason that payment in such material could not discharge a debt and cannot create one. The bank is not only responsible to the depositor where the check with the depositor's signature forged is paid by the bank (except where the depositor has been guilty of negligence sufficient to mislead the bank), but the bank is precluded from recovering from a party to whom the forged check has been paid, where such party, being without fault, would be prejudiced by being required to refund to the bank, upon whom rests the duty of determining the genuineness of the depositor's signature. Notwithstanding some conflict of authority upon the subject, a careful investigation of the adjudged cases and of the text-books leads us to the conclusion that the bank can recover of a party to whom payment is made on a forged check, indorsed by the party to whom paid, where the

party to whom paid has been guilty of negligence in receiving and indorsing the check; for, notwithstanding the negligence to some degree that the paying bank has been guilty of in paying the forged check without detecting the forgery of its depositor's signature, it often happens, or may happen, that the party to whom payment is made has been guilty of the first negligence in purchasing and indorsing the forged paper. The bank upon whom the check is drawn, in the practical administration of banking business, may well be lulled to a less careful scrutiny of its depositor's signature of a check where the same is indorsed by another bank with which it is in correspondence or interchange of business, than it would exercise in accepting and paying the same check, not so indorsed, to a stranger. The indorsement of the check by the payee may be said, ordinarily, to be a guarantee of the genuineness of the indorsements theretofore on the paper, and also of the genuineness of the drawer's signature, subject, perhaps, to some exception in particular cases, as, for instance, where the indorsement is made after the genuineness of the preceding signatures has been approved by the paying bank. Applying these principles to the case at bar, we are of opinion, and so adjudge, that the first fault was with the defendant bank. This bank accepted and cashed a check drawn on a bank in another county, to which the name of the drawer and the payee had both been forged, and, so far as this record dis-

closes, without requiring any identification of the parties to whom such payment was made; certainly without reserving any evidence of the identity of such parties for the benefit of itself or of others who might be injured by such forgery. The complainant bank, upon receiving such check in due course of mail for deposit to credit of defendant, might well rely upon the exercise of due prudence and diligence on the part of its depositor, the defendant bank, and might well regard the latter's indorsement of the check as significant of the fact that such prudence had been exercised, and, if not, that the indorsement would stand as a guarantee to the paying bank from loss that might otherwise fall upon it by reason of its passing the amount of the check to the credit of such indorser. Such would not only seem to be sound in theory and supported by authority, but is in accordance with the proof in this case; and it is a matter of such general information that perhaps the Court might be warranted in taking judicial knowledge of it; that in dealings between banks, and especially with reference to clearings and clearing-houses, banks will adjust and pay differences between each other, or between itself and the clearing-house, upon the faith of the indorsement by other banks of the checks involved in such settlement before they examine the signature to the checks involved or embraced in the settlement, relying on such indorsements as protecting it in such payment should a subsequent

and more careful scrutiny of the signatures disclose forgeries in the making and indorsing · of the checks so paid.

Mr. Daniel, in his work on Negotiable Instruments, after discussing and criticising the cases that are supposed to hold a bank liable at all hazards and to the last extremity, where it pays the check with the signature of its depositor forged, lays down the rule substantially as we have above stated it. 2 Daniel on Negotiable Instruments, Secs. 1655, 1655*a*, 1656, and 1657, with cases cited in the notes.

And the rule is stated by the learned contributor to the article on forged checks in 3 Am. & Eng. Enc. of Law, page 223, as follows: "Where, however, the loss has been traced to the fault or negligence of the drawer or holder, it will be fixed upon him." See cases cited in note 1.

And on page 225 of 3 Am. & Eng. Enc. of Law it is said: "Also the holder, by indorsing a check, warrants the genuineness of all prior indorsements." See note 1, citing numerous cases, amongst which is the case of *Harris* v. *Bradley*, 7 Yer., 310, where Judge Green lays down the doctrine as to the effect of an indorsement in guaranteeing the genuineness of prior indorsements in the language as quoted It is true that in the Yerger case the language was used with reference to a note, and not a check, and such may also be the case with other of the authorities cited in said note which we have not examined. Now,

20—4 P

while we concede that there is quite a difference between this rule as applicable to indorsers on commercial paper and as applied to checks, so far as the liability of the drawee is concerned, yet, we see no reason why the bank should not have the benefit of such rule where the indorsement is made under circumstances which establish· or impute negligence to the indorser. The cases of *Leroy* v. *The Bank of the United States*, 4 Dal., 234, and *The Bank of the United States* v. *The Bank of Georgia*, 10 Wheat., 333, are relied on as authority for the judgment of the Chancellor in the case at bar. The facts of the case in 4 Dal. are so briefly stated as to leave us uninformed as to the manner in which the question was presented. The case of *The United States Bank* v. *The Bank of Georgia*, in 10 Wheat., was where a forgery was by raising the notes of the defendant bank; the notes, coming in due course to the United States Bank, were presented to the Bank of Georgia and passed to the credit of the United States Bank. Nineteen days thereafter the forgery was discovered and notice given. Upon refusal of the United States Bank to make good the loss, the credit was by the Georgia Bank withdrawn from the account, and the United States Bank brought its suit for money had and received. It was held that the plaintiff could recover. While the reasoning of the learned Judge, and much of the argument, tends to sustain the contention of the defendant here, still the Court put its judg-

ment in that case distinctly "upon the ground that the defendants were bound to know their own notes, and, having received them without objection, they cannot recall their assent." While these two cases are criticised by Mr. Daniel as unsound, that criticism, so far as the latter case is concerned, may be well confined to the argument contained in the opinion; for the point decided is in no manner hostile, as we understand it, to the principle as announced by Mr. Daniel and adopted by us in the disposition of the case at bar; for there is nothing to show that there had been any negligence on the part of the United States Bank in receiving the notes of the Georgia Bank, and we can well understand how there could and ought to be a higher obligation upon the bank to know the genuineness of its notes of issue, passing current as money, than rests upon it to know the signature of the depositor on a check indorsed by a solvent correspondent. But putting them both on the same footing, there is wanting in the report of the case in 10 Wheat. any evidence of negligence on the part of the United States Bank.

The view we have expressed, and the principle upon which we reverse the Chancellor and award judgment here for complainant, is not only sustained by Mr. Daniel, but also by Mr. Chitty, Mr. Parsons, and Mr. Bolles, who fortify their conclusions by ample authority. See Chitty on Bills, 13 Am. Ed., star pages 431, 485; 2 Parsons

N. & B., 80; Bolles on Banks and their Deposit-
ors, Sec. 189; *Hardy* v. *Chesapeake Bank*, 51
Md., 585; *Leather Manuf. Bank* v. *Morgan*, 117
U. S., 96, 112; *Ellis* v. *Ohio Life Ins. & T. Co.*,
40 Ohio State, 628; *McLeroy* v. *Southern Bank of
Kentucky*, 14 La. An., 458; *National Bank of North
America* v. *Bangs*, 106 Mass., 441; *Rouvant* v.
*San Antonio Bank*, 63 Tex., 610; *First National
Bank* v. *Ricker*, 71 Ill., 439.

It results, therefore, that the decree of the
Chancellor must be reversed, and judgment rendered
here for the amount of the check, with interest
and costs.

<hr/>

### DISSENTING OPINION.

SNODGRASS, J.  I concur in the result reached
on account of the negligence of the indorsing
bank, but I do not agree to what may be implied
from the argument of the opinion that this bank
would have been liable had it not been negligent,
but had taken the check from a known and good
faith indorser.  This is the point determined in
the 4 Dallas case referred to.  I am of opinion
that the view is a sound one.  As between itself
and good faith indorsers the paying bank should
be the place of final settlement, where all prior
mistakes and forgeries should be corrected, and, if
not then corrected, the action of acceptance and
payment should be treated as final.  There must
be a time and place to adjust and end these

things as to innocent indorsers, and if the paying bank and date of payment is not that time and place, I do not see what can be or should be. Certainly there is no better or more appropriate one. It is the last time and last place the check is presented; it is to the paying bank, after it has gone through every hand it can, when all opportunity for mistake and forgery is over; it is to the depository of the signature as well as the funds of the drawer; it is the place selected by him and trusted by all to correct any mistakes and reject forgeries. Every interest and duty to itself, to its depositor, and to all indorsers and parties interested, require that the paying bank should settle any questions which could arise on it. If it fail to do so it should take the consequences. See Am. & Eng. Enc. of Law, Vol. III., page 222.

It will not do to say that this bank does not injure an indorsing bank by payment and delay. Days are of great moment in transactions of this kind. Any delay may be, and much delay must be, injurious.

Nor does the clearing-house arrangement affect this question. Banks are represented there as well as at their own counters, in an arrangement satisfactory to them. If not safe they should change it, but not escape liability for failure to exercise the usual care to detect errors and forgeries, in consequence of exercising one more desirable to them but less safe.