Burket, J.
Since the case of Price v. Neal, 3 Burr., 1354, decided by Lord Mansfield in 1762, the general rule has been and is, that when the drawee of a check or bill pays the same to a bona fide holder, such drawee cannot recover the money back upon discovering such check or bill to be a *212 forgery. The drawee is presumed to know the signature of the drawer, and if when the check or bill is presented to the drawee for payment, he pays the same, and it afterwards turns out to be a forgery, he cannot recover the money back from the person to whom he paid it. When the drawee is a bank, there is a much stronger reason for holding it to know the signature of its depositors and customers, than in the ease of a private individual, because banks keep a book in which are preserved the genuine signatures of their depositors, customers and correspondents.
That the general rule is as above stated, is shown by the following authorities : National Park Bank v. Ninth National Bank, 46 N. Y., 77; 7th Am. R., 310; Smith v. Mercer, 6 Taunt., 76; Wilkinson v. Johnson, 3 B. & C., 428; National Bank of Commerce v. National Mechanics Bank, 55 N. Y., 211; 14 Am. R., 232; Frank v. Chemical National Bank, 84 N. Y., 209; 38 Am. R., 501; Levy v. Bank of U. S., 4 Dall., 234; Morse on Banks and Banking, 3rd Ed., 463; 2 Daniels on Negotiable Instruments, 3d Ed., sections 1359 and 1655; Northwestern National Bank of Chicago v. Bank of Commerce of Kansas City, 107 Mo., 402; 15 L. R. A., 102; Commercial and Farmers National Bank v. First National Bank, 30 Maryland, 11; Deposit Bank of Georgetown v. Fayette National Bank, 90 Kentucky, 10; National Bank of Danvers v. First Nationl Bank of Salem, 151 Mass., 280; 21 Am. St. Rep., 450 ; National Park Bank of New York v. Seaboard Bank, 114 N. Y., 28; 11 Am. St. Rep., 612; 5 Am. and Eng. Enc. of Law, 2 Ed., 1071; Ellis & Morton v. Ohio Life Lnsurance and Trust Co., 4 Ohio St., 628.
*213 „ This last case fully recognizes the general rule, but the majority of the court, two judges dissenting, held that as there was a local custom among banks at Cincinnati to the effect that before purchasing bills or cheeks drawn upon other banks in that city, that the purchasing bank should have the identity of the person offering to dispose of the paper fully shown, and make careful inquiry as to his right to the paper, and as to its being genuine, and that the purchasing bank in that case, having neglected the customary precautions, was guilty of such negligence as to make it liable to pay back the money received on the forged bills. The court was careful to say that it was dealing only with the case then under consideration; and the right to recover back the money in that case is founded upon the local custom and the general rule is not modified further, than to hold that in view of the local custom, known to both banks, the purchasing bank was guilty of such negligence in taking the* bills from an unidentified stranger, as to render it liable to pay back the money when the bills turned out to be forgeries.
It is urged, that as the check was presented for payment to the drawee bank, by another bank in good standing, the drawee bank had a right to presume that the check was all right, and relying upon such presumption, it was thereby thrown off its guard, and was less careful in scrutinizing the signature to the check, than if the same had been presented at its counter for payment by an individual. A holding to this effect has been made in a few cases wherein the indorsements were unrestricted, but when the indorsement is “for collection,” or “for account of,” it is notice to the drawee that the bank presenting the check or bill for pay *214 ment is not the owner, but only the agent of the owner, and that the money is to be remitted to the owner, back through the same channel through which the check or bill was received by the collecting bank. In such cases the collecting bank acts as the agent, or servant of the owner, and the drawee bank is not justified in relaxing its vigilance.
Some years ago the practice of indorsing checks “for collection,” or “for account of,” had become almost universal, and when it was decided in the above cases of National Park Bank of New York v. Seaboard Bank and Northwestern National Bank of Chicago v. Bank of Commerce of Kansas City, that the drawee bank could not recover back the money, in the one case from the collecting bank, nor in the other from the bank owning the draft, it startled the banks located in large cities, and awakened them to the dangers attending the payment' of such drafts or bills, and the result was that in the year 1896, the clearing house in the city of New York adopted a rule to the effect thai its members should not send through the exchanges any paper having 'any qualified or restrictive indorsements, such as “for collection,” or “for account of,” unless all indorsements were guaranteed by the bank sending such paper. This' action was soon followed by the clearing houses in other cities, and in some of them all indorsements are required to be either in blank, or ‘ ‘pay to-- or order. ” By this action of the clearing houses, indorsements “for collection,” or “for account of,” have fallen into disuse, and the banking business of the country is now done, almost universally, upon unrestricted indorsements. The decisions of the courts as to the rights and liabilities of the *215 parties to paper with ■unrestricted indorsements thereon, vary somewhat in different states, but in this state, the general rule that the drawee bank is bound to know the signature of the drawer, has not been modified, further than as permitted by local custom, as in the Ohio Life Insurance and Trust Co. case, above cited.
It is urged that the Belmont bank having indorsed the check, thereby guaranteed that the signatures of the drawer and indorsers were genuine, and some cases are cited to that effect. Peoples Bank v. Franklin Bank, 88 Tenn., 299; 17 Am. St. Rep., 884; First National Bank of Danvers v. First National Bank of Salem, 151 Mass., 280; 21 Am. St. Rep., 450.
Other cases hold, that an indorser does not guarantee that the name of the drawer is genuine, but that the drawee must determine that for himself, and at his own peril. Germania Bank of Minneapolis v. Boutelle, 60 Minn., 189; 27 L. R. A., 635, and cases there cited.
In the cases in which it has been held that the indorsement is a guaranty, to the effect that the name of the drawer is genuine, the indorsements were unrestricted, and therefore indicated an absolute transfer, and sale of the paper. But when the indorsement is for collection only, as in this case, it indicates on its face, that the indorser remains the owner of the paper, and that his successive indorsees are only his agents for the sole purpose of collecting the paper, and remitting the proceeds to him. Such a restricted indorsement does not authorize a subsequent indorsee to negotiate the paper. His only power is to collect it, and the drawee bank is bound by the notice in the •indorsement. Such an indorsement is not a guar *216 anty that the name of the drawer is genuine, but only that the names of the indorsers then on the paper are genuine. Mechanics Bank v. Valley Packing Company, 70 Mo., 643; 4 Mo. Appeal Reports, 200; Northwestern National Bank of Chicago v. Bank of Commerce of Kansas City, 107 Mo., 402; 15 L. R. A., 102.
In the case now under consideration the drawer’s name was a forgery, but the name of the payee indorsed on the check was genuine, having been written by the cashier at the request of the payee.
It has been urged that if the payee had been required by the cashier to write his name upon the check, that it might have shown that his name in the body of the check had been written by himself, and thus lead to a detection of the forgery. But in the above case of. First National Bank of Danvers v. First National Bank of Salem, the payee indorsed the cheek, and the handwriting was the same in both names, payee and indorser, and yet the forgery was not thereby detected, and the court attaches no importance to the fact in its decision of the case. In that case, and in the above ' case in the 4 Ohio St., 628, and in nearly all the cases in which the money has been recovered back, the bank purchasing the check or bill, took it from an unidentified strang’er, and this has often, though not always, been held to be such negligence as would authorize a recovery of the money. But in the case at bar, the facts do not show Elwood Horner to have been a stranger to the cashier of the Belmont bank, because as soon as he was notified of the forgery, he pointed out that Mr. Horner had died only a few days before, and that his estate was wholly insolvent. He was therefore known, and required no identification, and the cases which *217 turn upon the unidentified stranger, have no application to this case.
Again, it is conceded that J. W. Horner had no individual account with the First National Bank of Barnesville, the drawee, and that the bank charged the check to his account as administrator. This was not only irregular, but wrong. The bank should have refused payment, and allowed the check to go to protest; or if it desired to favor Mr. Horner, it should have notified him that his check was at the bank, and no funds with which to pay the same. Had this been done, the forgery would have been discovered at once, and notice would have been given to the Belmont bank, and that bank would then have had recourse on Elwood Horner, who indorsed and sold the check. Whether he was then solvent or not does not appear, and is of no importance. The bank would have had its recourse against him within three or four days after it parted with its money, and such recourse is regarded in commercial transactions as a valuable right; and of this right the Belmont bank was deprived by the acts of the Barnesville bank in not detecting that the name of its depositor was forged to the check, and in negligently charging it to his account as administrator.
It is therefore clear that the Belmont bank was guilty of no negligence, and that the loss occurred by reason of the acts of The First National Bank of Barnesville, and that it would be unconscionable to permit it to recover the money back from the Belmont bank.
The judgment of the circuit court is therefore reversed, and that of the common pleas affirmed.

Judgment accordingly.

Minshall, J., dissents.