## THE STATE *v.* BROADWAY NATIONAL BANK.*

### (*Nashville.* December Term, 1925.)

1. **BILLS AND NOTES.** Drawee of negotiable instrument, who accepts or pays on false signature of drawer, is bound by his act (Acts 1899, chapter 94, section 62 Thompson's Shannon's Code, section 3516a61]).

   Drawee of negotiable instrument, who accepts or pays bill or check, where the signature of the drawer is false, is bound by his acceptance or payment under Acts 1899, chapter 94, section 62 (Thompson's-Shannon's Code, section 3516a61). (*Post, pp.* 120, 121.)

   Acts cited and construed: Acts 1889, ch. 94, sec. 62.

   Cases cited and approved: Gibson County v. Rains, 79 Tenn., 20; Camp v. Knox County, 71 Tenn., 199; Figuers v. Fly, 137 Tenn., 358; Farmers' & Merchants' Bank v. Bank of Rutherford, 115 Tenn., 64; Price v. Neal, 3 Burr, 1354.

   Code cited and construed: Sec. 3516a61(T.-S.).

2. **BILLS AND NOTES.** Drawee may recover money paid holder on forged indorsement.

   Drawee has no duty to ascertain that signatures of payee or indorsers are genuine, and may recover from holder money paid him on a forged indorsement. (*Post, p.* 121.)

   Cases cited and approved: People's Bank v. Franklin Bank, 88 Tenn., 299; United States v. Nat. Exchange Bank, 29 S. Ct., 665.

3. **BILLS AND NOTES.** Where State comptroller drew warrants on State treasurer, who paid them on faith of forged indorsement, State is not precluded from recovering sums paid by fact that State was both drawer and drawee.

---

*On right of drawee of check to recover money paid on forged indorsement, see note in L. R. A., 1916E, 539.

On right of government to recover money paid on forged drafts drawn upon it, see note in 10 A. L. R., 1406.

153 Tenn.—8.

State v. Broadway Nat. Bank.

Where State comptroller drew warrant on State treasurer, who paid them on faith of forged indorsement, State is not precluded from recovering sums paid by the fact that the drawer and drawee are the same entity, to-wit, the State; the State not being bound to know the signature of every person to whom it issues a payable warrant. (*Post. pp.* 121-124.)

Cases cited and approved: United States v. National Exchange Bank, 29 S. Ct., 665; State v. Merchants' Nat. Bank, 177 N. W., 135; United States v. Chase Nat. Bank, 40 S. Ct., 361; United States v. Nat. Exchange Bank of Baltimore, 1 F. (2d.), 888.

4. **BILLS AND NOTES.** Indorser warrants to drawee that signatures of previous indorsers and of payee are genuine.

An indorser warrants to drawee that signatures of previous indorsers and signature of the payee are genuine; warranty not extending only to holders in due course. (*Post, p.* 124.)

Cases cited and approved: First Nat. Bank v. N. W. Nat. Bank, 152 Ill., 296; Levy v. Bank of America, 24 La. Ann., 220; Third Nat. Bank v. Merchants' Nat. Bank, 27 N. Y. S., 1070; Bank of Williamson v. McDowell County Bank, 66 W. Va., 545; People's Bank v. Franklin Bank, 88 Tenn., 299.

Case cited and distinguished: Leather Mfgrs'. Nat. Bank v. Merchants' Nat. Bank, 128 U. S., 26.

5. **BILLS AND NOTES.**

Indorser does not warrant to drawee that signature of drawer is genuine, under Acts 1899, chapter 94, section 66 (Thompson's-Shannon's Code, section 3516a65). (*Post, p.* 125.)

Acts cited and construed: Acts 1899, ch. 94, sec. 66.

Case cited and approved: Farmers' & Merchants' Bank v. Bank of Rutherford, 115 Tenn., 64.

Code cited and construed: Sec. 3516a65 (T.-S.).

6. **BILLS AND NOTES.**

Bank, receiving payment and indorsing warrants on State treasurer, "all prior indorsements guaranteed," may not urge it did not guarantee previous indorsements. (*Post, p.* 125.)

State v. Broadway Nat. Bank.

7. **BILLS AND NOTES.**

Bank taking by indorsement warrants on State treasurer, on faith of forged indorsements, secures no title; the indorsements being wholly inoperative under Acts 1899, chapter 94, section 23 (Thompson's Shannon's Code, section 3516a22). (*Post, pp.* 125, 126.)

8. **BILLS AND NOTES.**

Payment of warrants by State to one holding under forged indorsement does not discharge warrant, in view of Act 1899, chapter 94, section 23 (Thompson's-Shannon's Code, section 3516a22). (*Post.* 125, 126.)

9. **BILLS AND NOTES.**

As respects right to recover payment. payment of warrants to one holding under forged indorsement is without consideration, warrant not being discharged, in view of Acts 1899, chapter 94, section 23 (Thompson's-Shannon's Code, section 3516a22). (*Post, pp.* 125, 126).

10. **BILLS AND NOTES. Money paid by State to one holding warrants under forged indorsements may be recovered in general assumpsit (Acts 1899, chapter 94, section 23 [Thompson's-Shannon's Code, section 3516a22]).**

Money paid by State to one holding warrants under forged indorsements may be recovered in action of general *assumpsit*, as money paid under mistake and without consideration, in view of Acts 1899, chapter 94, section 23 (Thompson's-Shannon's Code, section 3516a22). (*Post, pp.* 125, 126.)

Acts cited and construed: Acts 1899, ch. 94, sec. 23.

Cases cited and approved: Henderson v. Overton, 10 Tenn., 394; Dickins v. Jones, 14 Tenn., 483; Frazier v. Tubb & Stokes, 49 Tenn., 662; Mt. Verd Mills Co. v. McElwee, 42 S. W., 465.

Code cited and construed: Sec. 3516a22 (T.-S.).

11. **ESTOPPEL. Second lieutenant, acting as clerk in office of adjutant general, has no apparent authority to issue warrants so as to estop State from recovering money paid on faith of indorsements forged by him on warrants he negotiated.**

Second lieutenant, acting as clerk in office of adjutant general of
State, has no apparent authority to issue warrants on State
treasurer, so as to estop State from recovering money paid on the
faith of indorsements forged by him on warrants wrongfully ob-
tained and cashed. (*Post, p.* 126.)

Case cited and approved: Shuttle Co. v. Nat. Bank, 134 Tenn., 379.

12. **BILLS AND NOTES.** State was not negligent in intrusting lieuten-
ant in adjutant general's office, who presented vouchers, with de-
livery of warrants, so as to preclude recovery for payment on the
faith of indorsements forged by lieutenant.

State was not negligent in intrusting a lieutenant in the adjutant
general's office, who presented vouchers for warrants to comptroller,
with custody of the warrants for delivery, so as to preclude recovery
of money paid on the warrants on faith of indorsements forged
by lieutenant. (*Post, pp.* 126-128.)

13. **ESTOPPEL.**

Negligence, to work an estoppel, must be proximate cause of leading
the complainant into the mistake, and must occur in the same
transaction. (*Post, pp.* 126-128.)

14. **ESTOPPEL.** Where State paid warrants on faith of forged indorse-
ments, it was not estopped to recover by fact that Governor and
adjutant general had approved vouchers on which they were issued
in blank.

Where governor and adjutant general approved vouchers in blank,
and clerk wrongfully filled them out, secured warrants thereon,
forged payees' names, and cashed them at a bank, and State paid
the warrants to holder, State is not estopped to recover the money
paid to such holder by the method of handling the vouchers; it not
being proximate cause of the mistake and not part of the same
transaction. (*Post, pp.* 126-128.)

Cases cited and approved: Fourth Nat. Bank v. N., C. & St. L. Ry.,
128 Tenn., 530; O'Herron v. Gray, 168 Mass., 573.

Case cited and distinguished: Hill v. Jewett Pub. Co., 154 Mass., 172.

State v. Broadway Nat. Bank.

15. **ESTOPPEL.** Where lieutenant, intrusted with State warrants, forged names of payees and cashed them at bank, rule that, where one of two innocent persons must suffer by acts of third, he enabling such third person to occasion the loss must sustain it, does not apply.

Where lieutenant, intrusted with custody of State warrants for delivery, forged names of payees, and cashed them at a bank, rule that, where one of two innocent persons must suffer by acts of a third, he who has enabled third person to occasion the loss must sustain it, does not apply; the crime and not the negligent act being the proximate cause of the loss. (*Post, pp.* 128, 129.)

Case cited and distinguished: Knoxville Nat. Bank v. Clark, 51 Iowa, 264.

16. **BILLS AND NOTES.** Where clerk forged names of payees of warrants, and they were paid by the State, fact that one warrant was payable to party with no claim against State does not preclude recovery thereon.

Where clerk in adjutant general's office forged the names of the payees on warrants and cashed them at a bank, and the holder was paid the amount of the warrants by the State, that one warrant was payable to party with no claim against the State does not preclude recovery by the State from such holder thereon. (*Post,* p. 129.)

17. **BILLS AND NOTES.** Where clerk forged payees names on State warrants, and cashed them at a bank, and the State paid holder amount of warrants, such holder, when sued by State, may not insist that State proceed upon clerk's bond.

Where clerk forged payees' names on State warrants and cashed them at bank, and the State paid subsequent holder amount of the warrants, such holder, when sued by the State, may not insist that State proceed upon clerk's bond to the State, as bond was *res inter alios acta*, especially where bond is less than amount due. (*Post,* p. 129.)

State v. Broadway Nat. Bank.

Case cited and approved: Bank of United States v. Bank of Georgia, 10 Wheat., 333.

*Headnotes 1. Bills and Notes, 8 C. J., Sections 505, 844; 2. Bills and Notes, 8 C. J., Sections 844, 1028; 3. Bills and Notes, 8 C. J., Section 844; 4. Bills and Notes, 8 C. J., Section 581; 5. Bills and Notes, 8 C. J., Section 581; 6. Bills and Notes, 8 C. J., Section 533; 7. Bills and Notes, 8 C. J., Sections 511, 1028; 8. Bills and Notes, 8 C. J., Section 832; 9. Money Received, 27 Cyc., p. 855; 10. Bills and Notes, 8 C. J., Section 1071.(Anno); 11. Estoppel, 21 C. J., Section 177; 12. Bills and Notes, 8 C. J., Section 843; 13. Estoppel, 21 C. J., Section 175; 14. Estoppel, 21 C. J., Section 176; 15. Estoppel, 21 C. J., Section 176; 16. Bills and Notes, 8 C. J., Section 844 (Anno); 17. Bills and Notes, 8 C. J., Section 844 (Anno).

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —Hon. James B. Newman, Chancellor.

F. M. Thompson, Chas. L. Cornelius and E. J. Smith, for the State.

George H. Armistead, Jr., and W. E. Norvell, Jr., for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

J. M. Shawhan was formerly a second lieutenant in the quartermaster's corps, Tennessee National Guard, and a clerk in the office of the adjutant general of the State. During a period September 10, 1921, to February

13, 1922, Shawhan procured the comptroller of the State to issue eleven warrants aggregating $2,756.54. These warrants were drawn on the treasurer of the State, and were, except in one instance, payable to the orders of persons who had *bona-fide* claims against the State in corresponding amounts. Such claims arose out of the maintenance of the military forces of the State.

After the warrants were written by the comptroller, he turned them over to Shawhan to be delivered or mailed to the payees. Instead of thus disposing of the warrants, Shawhan forged indorsements of the payees, and negotiated said warrants on his own behalf at the Farmers' & Merchants' Bank of Nashville. This bank in turn indorsed these warrants to the Broadway National Bank of Nashville, and the latter bank presented them to the treasurer of the State, by whom they were paid.

This suit was brought by the State of Tennessee to recover from defendant, Broadway National Bank, the amount of money so paid to its upon said warrants, fraudulently indorsed as aforesaid. The chancellor dismissed the bill, and the State appealed. The appeal was to this court, since the case was tried below upon an agreed statement of facts. Other pertinent facts will be set out in the course of the opinion.

All the warrants are in the same form. One of them is as follows:

"Office of Comptroller of the Treasury,

"No. 142543. Nashville, Tenn., Sept. 8, 1921.

"Treasurer of the State of Tennessee:

"Pay to the order of estate of Daniel Briscoe Co.

$200, two hundred dollars exactly Dollars, the amount due on account of Nat. Gds. State Tenn.

"JOHN B. THOMASON.

" J. B. THOMASON,

"Comptroller of the Treasury."

While these instruments were negotiable in form, counsel for both parties think they were not in fact negotiable; that State warrants, like county warrants, are nonnegotiable papers. *Gibson County* v. *Rains,* 11 Lea, 20; *Camp* v. *Knox County,* 3 Lea, 199.

Nevertheless both the State and the bank say it is immaterial whether or not the warrants be treated as negotiable. Both agree that the indorser of negotiable paper and the assignor of assignable paper warrant to subsequent holders in due course, or to innocent purchasers for value, that the paper is genuine. But the bank contends that no guaranty extends to the drawee, at least when the drawee and the drawer are the same person.

We need not, therefore, consider whether these warrants were negotiable, but may assume that they were for the purposes of this opinion. So far as we can see, it would not affect the rights of the parties to this suit, whether the instruments be treated as negotiable or nonnegotiable.

It is settled law that the acceptor of a negotiable instrument admits "the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument." Section 62, chapter 94, Acts of 1899 (Thompson's-Shannon's Code, section 3516a61); *Figuers* v. *Fly,* 193 S. W., 117, 137 Tenn., 358; *Farmers' & Merchants' Bank* v. *Bank of Rutherford,* 88 S. W., 939,

115 Tenn., 64, 112 Am. St. Rep., 817. That is to say, it is incumbent on the drawee to satisfy himself that the drawer's signature is genuine, before accepting or paying the bill or check, and, if the drawee makes a mistake, it is his misfortune. This rule was first announced in *Price* v. *Neal,* 3 Burr, 1354, 97 Eng., Reprint, 871, and has been generally adopted in this country.

Such a duty does not, however, rest upon the drawee with reference to the signature of the payee or the signatures of the indorsers, and the drawee, in general, who pays out money on a forged indorsement, may recover such money from the holder who has presented and received the proceeds of the paper. *Figuers* v. *Fly,* supra; *People's Bank* v. *Franklin Bank,* 12 S. W., 716, 88 Tenn., 299, 6 L. R. A., 724, 17 Am. St. Rep., 884; *United States* v. *National Exchange Bank,* 29 S. Ct., 665, 204 U. S., 302, 53 L. Ed, 1006, 16 Ann. Cas., 1184; and see cases collected in note, L. R. A., 1916E, 539.

Up to this point, as we understand the briefs, there is no difference between the parties hereto as to the law. As intimated though, the bank insists that the drawee stands in a different relation to forged indorsements when the drawee and the drawer are the same. In the case before us, these warrants were instruments drawn by the comptroller of the State on the treasurer of the State; that is, drawn by the State on itself.

We are unable to follow this argument made for the bank. No such distinction appears in the cases.

In *United States* v. *National Exchange Bank,* 29 S. Ct., 665, 214 U. S., 302, 53 L. Ed., 1006, 16 Ann. Cas., 1184, orders or checks were drawn by a pension agent of the United States upon the assistant treasurer of the

United States at Boston in favor of certain pensioners. These checks were procured upon fraudulent vouchers presented to the pension agent, and the names of the payees of said checks were forged, and the checks cashed by defendant National Exchange Bank. They were subsequently presented and paid by the assistant treasurer of the United States. When these forged indorsements were discovered, the government brought suit against the National Exchange Bank, which bank had cashed the checks, sent them for collection to the assistant treasurer, and received the proceeds thereof. The supreme court of the United States held the defendant bank liable.

In *State* v. *Merchants' National Bank,* 177 N. W., 135, 145 Minn., 322, warrants were issued by the State auditor upon the State treasurer in payment of salaries due members of the National Guard. These warrants were in that case intrusted to a clerk in the office of the adjutant general for delivery to the payees personally or by mail, and in that case the adjutant general's clerk forged the payees' indorsements on the warrants, and deposited them to his own account in bank. The warrants were presented to the State treasurer by the defendant bank and paid. The court held that the State was entitled to recover from such bank.

In the two cases just mentioned there were checks or warrants drawn by the United States government upon itself and by the State of Minnesota upon itself. While the drawer and the drawee were the same in each case, it was not thought that this identity imposed any additional duty with reference to the signatures of the payees.

We can see no justification for the argument that the State is bound to know the signature of every person with

whom it deals and to whom it issues a payable warrant. This would put an impossible burden upon the disbursing officers of the State. It would, as said in *United States* v. *National Bank,* supra, require the assumption that— "That was known, or ought to have been known, which on the face of the situation was impossible to be known, would besides wholly disregard the relation between the parties, and would also require that to be assumed which the obvious dictates of common sense make clear could not be truthfully assumed."

*United States* v. *Chase National Bank,* 40 S. Ct., 361, 252 U. S., 485, 64 L. Ed., 675, 10 A. L. R., 1401, is no authority for the insistence of the bank herein. In that case the draft was supposed to have been drawn by an officer entitled to draw such instruments. It was payable to his own order, and appeared to have been indorsed by him. His signature both on the face of the draft and the back of it was forged. The supreme court denied a recovery to the government against the bank that presented and obtained the money on the draft. The decision, however, was rested on *Price* v. *Neal,* supra, and decisions of the supreme court following *Price* v. *Neal;* that is, the government's suit was dismissed because it was held bound to know the signature of the officer who appeared to have signed the paper as drawer. It was added that the circumstance that this officer appeared likewise to have signed as indorser did not take the case out of the rule.

Neither is *United States* v. *National Exchange Bank of Baltimore* (C. C. A.), 1 F. (2d), 888, an authority upon which the bank herein can rely.

In that case the check was raised from its original amount and presented by and paid to defendant bank. It was held there could be no recovery by the government from the bank upon discovery of the fraudulent alteration, for the reason that the drawee and drawer were the same. As drawee one may be very well charged with knowledge of the amounts of all checks he has drawn upon himself. This is a very different thing from charging him with knowledge of the signature of every person into whose hands such checks may come.

Counsel have argued that an indorser does not warrant to the drawee that the signatures of previous indorsers and the signature of the payee are genuine, but that such a warranty only extends to holders in due course.

Many well-considered cases take a contrary view.

"One who, by presenting forged paper to a bank, procures the payment of the amount thereof to him, even if he makes no express warranty, in law represents that the paper is genuine." *Leather Mfgrs.' Nat. Bank* v. *Merchants' National Bank,* 9 S. Ct., 3, 128 U. S., 26, 32 L. Ed. 342.

See, also, *First National Bank* v. *Northwestern National Bank,* 38 N. E., 739, 152 Ill., 296, 26 L. R. A., 289, 43 Am. St. Rep., 247; *Levy* v. *Bank of America,* 24 La. Ann., 220, 13 Am. Rep., 124; *Third National Bank* v. *Merchants' National Bank,* 27 N. Y. S., 1070, 76 Hun., 475; *Bank of Williamson* v. *McDowell County Bank,* 66 S. E., 761, 66 W. Va., 545, 36 L. R. A. (N. S.), 605; and *United States* v. *National Exchange Bank,* supra. To this extent *People's Bank* v. *Franklin Bank,* 12 S. W., 716, 88 Tenn., 299, 6 L. R. A., 724, 17 Am. St. Rep., 844, has not been modified.

State v. Broadway Nat. Bank.

It is true an indorser does not assume all the obligations to the drawee that he does to subsequent holders in due course under section 66, chapter 94, Acts of 1899 (Thompson's-Shannon's Code, section 3516a65). He does not warrant to the drawee that the signature of the drawer is genuine. That is the holding in *Farmers' & Merchants' Bank* v. *Bank of Rutherford,* 88 S. W., 939, 115 Tenn., 64, 112 Am. St. Rep., 817.

In the case before us, the defendant bank, however, in as many words warranted to the State that prior indorsements upon the warrants when presented for payment were genuine. Each one of these warrants, when presented to the treasurer of the State for payment, had stamped thereupon, "Broadway National Bank, Nashville, Tennessee, Paid (the date), all prior indorsements guaranteed." Defendant bank received payment of these warrants on the terms just quoted, and, is now in no position to urge that it did not guarantee previous indorsements.

Moreover this is not necessarily a suit upon a warranty but for money had and received.

Defendant bank had no title to these warrants. The forged indorsements of the payees under which it claimed were wholly inoperative. Section 23, chapter 94, Acts 1899 (Thompson's-Shannon's Code, section 3516a22). Payment of these warrants by the State to defendant bank was no discharge of these obligations of the State, and such payment was, therefore, without any consideration. Money paid under mistake and without consideration may be recovered in an action at law, of general *assumpsit. Henderson* v. *Overton,* 2 Yerg., 394, 24 Am. Dec., 492; *Dickins* v. *Jones,* 6 Yerg., 483, 27 Am. Dec.,

488; *Frazier* v. *Tubb & Stokes*, 2 Heisk., 662; *Mt. Verd Mills Co.* v. *McElwee* (Tenn. Ch. App.), 42 S. W., 465; *Leathers Mfgrs.' National Bank* v. *Merchants' National Bank*, supra.

We can find no basis upon which to raise an estoppel against the State.

The bank seeks to bring this case within the authority of *Shuttle Co.* v. *National Bank*, 183 S. W., 1006, 134 Tenn., 379. In that case a general agent of the complainant, who had full and exclusive authority to draw upon its bank account, made checks payable to certain parties, forged the names of these payees, and cashed the checks; that is to say, the checks were issued by the complainant itself—by the agent intrusted with authority to draw the checks—bearing the forged indorsements. The court held that the complainant could not question signatures on the checks which they bore when complainant put them out.

Shawhan was not a fiscal officer of the State. He had no authority to issue warrants on behalf of the State. It was not within the apparent scope of the authority of a mere clerk like Shawhan to bind the State in any such manner as this.

It is urged that the State should be estopped by reason of negligence charged in matters preliminary to the issuance of these warrants. It was the practice of the comptroller to require vouchers to be prepared in the office of the adjutant general certifying to the correctness of any account for which a payable warrant was desired. It was also required that these vouchers be approved by the adjutant general and by the governor. It seems that the adjutant general and governor had approved blank

vouchers and left them in Shawhan's custody, and he later filled them out and presented them to the comptroller, and warrants were obtained thereupon. These vouchers were not put into circulation, but remained with the comptrolled to justify the issuance of warrants by him.

Whatever may be said as to the methods pursued respecting the vouchers, we think that defendant bank had no more interest in this matter than any other taxpayer.

There was no negligence in writing up the warrants. They were not put out in a form to tempt forgery. Nor do we think there was any negligence in intrusting the warrants to Shawhan to be delivered or mailed. The comptroller himself certainly could not be expected in person to deliver or mail every payable warrant that goes out from his office. We do not think it was negligent in that official to intrust the delivery of such warrants to a commissioned officer in charge of the clerical details of the adjutant general's office. The claims came through the adjutant general's office, and the comptroller, instead of having one of his own clerks undertake the delivery of the warrants, very naturally intrusted this duty to .one of the adjutant general's clerks.

Negligence with reference to the preparation of the vouchers, upon these warrants issued, was remote. It was not a part of the issuance and delivery of the warrants. Where an estoppel is sought to be based on negligence, such negligence must be the proximate cause of leading the complainant party into the mistake. *Fourth National Bank* v. *Nashville, C. & St. L. Ry.*, 161 S. W., 1144, 128 Tenn., 530; 21 C. J., 1169, and cases cited. Also the negligence must be in the transaction itself.

Moreover, intrusting the warrants to Shawhan for delivery was not the cause of defendants cashing the warrants. A criminal act, forgery of indorsements, intervened as the cause of defendant bank's loss. This intervening cause the comptroller had no reason to anticipate. *O'Herron* v. *Gray,* 47 N. E., 429, 168 Mass., 573, 40 L. R. A., 498, 60 Am. St. Rep., 411.

"And accordingly when one who has had confidence reposed in him has availed himself of his opportunity to commit a fraud upon others by means of forgery, it has usually been held in England that the loss was not a natural or probable result of the confidence thus reposed, even though it showed carelessness, and that it was too remote to be properly chargeable upon those who were thus careless in reposing the confidence." *Hill* v. *Jewett Pub. Co.,* 28 N. E., 142, 154 Mass., 172, 13 L. R. A., 193, 26 Am. St. Rep., 230.

Defendant bank relies upon the rule that, where one of two innocent persons must suffer by acts of a third, he who has enabled such third person to occasion the loss must sustain it. This rule has many limitations.

". . . The rule does not apply in cases where the wrong was accomplished through the instrumentality of a criminal act, it being held that in such cases the crime, and not the negligent act is the proximate cause of the injury." 21 C. J., 1172.

"It has never, we think, been carried to the extent of making one person civilly liable for the crime of another, and, on principle, we think it cannot be." *Knoxville National Bank* v. *Clark,* 1 N. W., 491, 51 Iowa, 264, 33 Am. Rep., 129.

See, also, many cases collected under 21 C. J., 1172, supra. There are a few cases, in which the drawers have been held liable on raised checks, where the checks have been so carelessly prepared as to invite alteration. As seen, however, we have no such exceptional case before us, and the weight of authority is against the decisions just noted. Note, L. R. A., 1918B, 327.

As stated heretofore, all these warrants were issued in favor of parties to whom the State was justly indebted, in the respective amounts, except one. Shawhan appears to have procured one small warrant payable to a party who had no claim against the State. Had this warrant been duly delivered to such party, it would doubtless have been returned, or the State could have recovered the amount thereof from such party. We are of opinion, therefore, that the State has the same rights respecting this warrant, against defendant bank who negligently cashed it, that it has respecting the other warrants. The bank had no concern with the *bona-fides* of the claims upon which any of the warrants issued.

The matter of Shawhan's bond to the State was *res inter alios acta,* and the bank has no right to insist upon the State proceeding upon this bond. *Bank of United States* v. *Bank of Georgia,* 10 Wheat., 333, 6 L. Ed., 334. The bond, too, was in an amount less than the amount of Shawhan's forgeries.

Some other questions are made by the defendant bank, but what we have said is conclusive of the case.

The decree of the chancellor will be reversed, and a decree entered here in favor of the State against defendant bank for the amount of these warrants, with interest from the filing of the bill.