FURST & FURST v. J. C. FREELS.

Eastern Section.    May 14, 1928.

McCanless, Taylor & Bell, of Morristown, for appellant.
W. N. Hickey, of Morristown, for appellee.

FAW, P. J. The complainants, Geo. Furst and Toby Furst, partners under the name and style of Furst & Furst, brought this suit in the chancery court of Hamblen County, on March 10, 1924, seeking to recover a judgment against J. C. Freels upon a "trade acceptance" for $102.60, with protest fees. The case was finally heard by the Chancellor on bill, answer and proof, and a decree was entered (on November 16, 1926) by which the Chancellor granted a recovery in favor of complainants and against defendant for the amount of the trade acceptance sued on, $102.60, together with the sum of $10.99 interest thereon from January 17, 1924, and the further sum of $2.50 protest fees, making an entire recovery of $116.09, and also for the costs of the cause, for all of which execution was awarded.

Defendant excepted to the Chancellor's findings of fact and conclusions of law, and to the decree based thereon, and prayed an appeal to this court, which was granted by the Chancellor and perfected by the defendant.

Appellant, the defendant below, has presented three assignments of error to this court. The first assignment is that the chancery court erred in holding and adjudging that complainants had alleged in their bill, with the required sufficiency and particularity, that they were innocent purchasers of the trade acceptance in controversy.

In the phraseology of the bill, the complainant partnership is treated as an entity, and therein the complainant makes the following averments:

"That, as above stated, it is a partnership composed of Geo. Furst and Toby Furst, doing business under the firm name of Furst & Furst, at Newark, N. J. That in due course of business and for a valuable consideration, before maturity, the said partnership of Furst & Furst bought of the Security Ink Manufacturing Corporation, a trade acceptance dated Nov. 17th, 1923, in the sum of $102.60, drawn on Freels Drug Store, of Morristown, Tennessee, and due Jan. 17th, 1924, and that said trade acceptance was accepted on Nov. 17th, 1923, by Freels Drug Store by and through its owner and operator, J. C. Freels; that the said trade acceptance was presented for payment on the date it became due and that payment was refused by Freels Drug Store and J. C. Freels, and that the same was ·protested on Jan. 17th, 1924, for 'non-payment' by W. D. Bushong, Notary Public; that the said trade acceptance is just, due and unpaid and in addition to the principal of $102.60, has been added $2.50, protest fees, making a total due complainant of $105.10.

"The original of the said trade acceptance is herewith filed as Exhibit 'A' and made a part of this bill, but need not be copied in the issuance of process."

We have quoted the entire bill, except the prayer whereby (after the usual prayer for process and waiver of answer under oath) complainant prays for a decree against defendant J. C. Freels for the amount of said trade acceptance, with protest fees added, and for general relief.

In his answer, the defendant said, among other things, the following:

"This defendant says that said complainants Furst & Furst are not innocent purchasers of said trade acceptance. The averments of complainants' bill in this respect are specifically met and denied in toto and defendant relies upon the faults and defects in complainants' bill and the lack of proper averments therein where it is attempted to set up the fact that complainants Furst & Furst are innocent purchasers of said trade acceptance."

The above quoted excerpt from the defendant's answer was treated below as raising the question presented by appellant's first assignment of error, supra, and it appears from the Chancellor's written opinion, incorporated in the decree, that he decided this question adversely to the appellant.

On this point, it is the insistence of appellant Freels that the bill does not aver that, at the time the trade acceptance was negotiated to Furst & Furst, they "had no notice of any infirmity in the instrument or defect in the title of the party negotiating it," and does not aver that they (Furst & Furst) "took the instrument in good faith and for value." Upon the assumption that the bill does not contain such averments, it is insisted that proof of such facts will not sustain a decree for complainants, in the face of undisputed proof that there was a total failure of consideration for the trade acceptance upon which complainants are seeking to recover. In other words, defendant seeks to invoke the well established rule that proof without allegations will never support a decree.

It will be observed that complainants allege in the bill that they bought the trade acceptance upon which they are suing "in due course of business and for a valuable consideration, before maturity."

By Section 52 of the Negotiable Instruments Law (Acts of 1899, Chapter 94—Shan. Code, Sec. 3516a60) it is enacted that, "a holder in due course is a holder who has taken the instrument under the following conditions; (1) that it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that

at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

By virtue of the statute just quoted, an averment that one who sues upon a negotiable instrument is "a holder in due course" imports, and is equivalent to an averment, that he took the instrument under the conditions set forth in that statute as constituting "a holder in due course," which "conditions" include those appellant is insisting were omitted from the present bill. This was, in substance, the view of the Chancellor, and in that view we concur. The appellant's first assignment of error is, therefore, overruled.

The appellant's second assignment is as follows:

"The court was in error in failing to hold, in view of the defendant's plea of non assignavit in his answer, that the burden of proof was upon complainants to show that they were innocent purchasers of said trade acceptance in the full meaning of that term, and especially in holding that E. Klar, as the secretary of the Security Ink Manufacturing Corporation, had authority to endorse to Furst & Furst in behalf of his principal, the Security Ink Manufacturing Corporation, the trade acceptance in controversy. There was no proof showing any such authority on the part of E. Klar, Secretary, aforesaid, and the said E. Klar did not have such authority in virtue of his being secretary of said corporation; and by his acceptance of the trade acceptance the defendant did not acknowledge or agree, as a matter of fact or as a matter of law, that E. Klar, Secretary, had such authority."

In order that the questions presented by the second assignment of error, supra, may be better understood, it is proper that certain facts, which we find from the record, should be stated.

At the time of the transactions involved in this case, the defendant J. C. Freels was the sole owner and operator of a drug store at Morristown, Tennessee, which business was conducted under the name and style of "Freels Drug Store." The complainants, Geo. Furst and Toby Furst, are lawyers, and are the members of a partnership with an office in Newark, New Jersey. The Security Ink Manufacturing Corporation was engaged in business at 343 Fifth avenue, New York City, in the years of 1922 and 1923, and until some time in the early part of the year of 1924, when it went out of business. The circumstances under which the Security Ink Manufacturing Corporation "went out of business" are not disclosed by the record.

A certain certificate of stock in the record (which was issued to and held by the defendant Freels) recites that the Security Ink Manufacturing Corporation was incorporated under the laws of the State of Delaware, and the description of the drawer in the trade acceptance in suit imports that it is a corporation. There-

fore, for the purposes of this case, it must be assumed that the Security Ink Manufacturing Corporation was incorporated, although there is no direct evidence to that effect. Ingle System v. Norris & Hall, 132 Tenn., 472, 178 S. W., 1113.

Sometime in the latter part of the year of 1922, a traveling salesman representing the Security Ink Manufacturing Corporation sold some ink to defendant Freels. We infer that this bill of ink amounted to $53, as the record shows that one share of stock in the Security Ink Manufacturing Corporation was issued to defendant for each dollars worth of ink purchased, and it appears that a certificate was issued to defendant for fifty-three shares of stock. The ink thus purchased by defendant was received by him and was satisfactory.

In November 1923, another traveling salesman representing the Security Ink Manufacturing Corporation called at defendant's place of business in Morristown and solicited defendant to buy some more ink, but defendant declined to buy any ink at that time. Thereupon the salesman exhibited to defendant samples of an attractive line of fountain pens particularly suitable for holiday trade, which the salesman offered at what defendant Freels thought was an unusually low price, and defendant agreed to buy, and selected an assortment of these fountain pens amounting, at the price quoted, to $102.60. Defendant Freels owned considerable property at Morristown and had an excellent "credit rating" (of which the salesman was informed), but the salesman stated that, owing to the unusually low price at which the Security Ink Manufacturing Corporation was selling the pens, "he would only sell them for cash or on trade acceptance before shipment." Thereupon defendant executed an "acceptance" of the instrument upon which complainants are suing in this case. Under the agreement of purchase, the pens were to be shipped to defendant immediately, by express, but they were never received by defendant. After a reasonable time for transportation had elapsed, defendant wrote several letters to the Security Ink Manufacturing Corporation informing it that the pens had not been received and demanding shipment, but defendant received no reply to any of said letters, and never received an invoice, bill of lading or any evidence that the pens had been shipped. There was a total failure of consideration for the "trade acceptance," and obviously defendant had, and has, a valid defense to any suit which might have been brought thereon by the Security Ink Manufacturing Corporation, or anyone not a holder of said trade acceptance in due course.

The trade acceptance in question is in words and figures as follows:

"TRADE ACCEPTANCE.

"November 17, 1923.    $102.60

"No. ――――――

"On January 17, 1924, pay to the order of ourselves, One Hundred and Two and 60/100 Dollars.

"The obligation of the acceptor hereby arises out of the purchase of goods from the drawer. The acceptor may make this acceptance payable at any bank, banker or trust company in the United States which he may designate.

"TO FREELS DRUG STORE,

"MORRISTOWN, TENN. SECURITY INK MFG. CORP.

"by ―― E. KLAR, SEC'Y."

The acceptance is written across the face of the instrument, and is in these words:

"ACCEPTED

"Date―Nov. 17, 1923.

"Payable at―City National Bank.

"City―Morristown, Tenn.

"Sig.―Freels Drug Store.

"By―J. C. Freels."

Below the "acceptance" the following is written across the face of the instrument, viz:

"Protested for non-payment, January 17, 1924.

"W. D. Bushong, Notary Public."

On its back, the instrument bears an indorsement as follows:

"Security Ink Mfg. Corp.

"E. Klar, Sec'y."

Immediately below the indorsement above quoted is the indorsement of "Furst & Furst."

Several stamps of forwarding banks appear on the back of the instrument, but these are immaterial here.

It appears from the undisputed testimony of complainant Toby Furst that, on November 21, 1923, he (acting for his firm of Furst & Furst) purchased the "trade acceptance" in suit, along with a number of other "trade acceptances," from the Security Ink Manufacturing Corporation, that he paid for same at the time of purchase by check of Furst & Furst (and he exhibits the canceled check for $425.64 with his deposition); that he paid to the Security Ink Manufacturing Corporation the face value of said "acceptances," less a discount of ten per cent; that neither member of his firm was directly or indirectly connected with the Security Ink Manufacturing Corporation, either as attorney or stockholder, and had not at any time represented the Security Ink Manufacturing Corporation; that during a period approximately four months prior to the purchase of the acceptance in question, the complainant firm

had at least one-half a dozen similar transactions with the Security Ink Manufacturing Corporation, in which complainant had purchased other trade acceptances, some of which had been dishonored and some of which had been paid; that complainant had not bought any trade acceptances from the Security Ink Manufacturing Corporation since November 21, 1923, and that the witness (Toby Furst) had "personal charge" of all transactions between his firm and the Security Ink Manufacturing Corporation.

Mr. Furst (Toby) further testified that he had never been to the place of business of the Security Ink Manufacturing Corporation; that a note broker by the name of Julius Hirschorn, living in Brooklyn, brought a man to the office of witness and introduced him to witness as Mr. Klar, the President of the Security Ink Manufacturing Corporation; that "Messrs. Hirschorn and Klar came over subsequently," and that "on other occasions trade acceptances were sent over by Klar's representative," and "upon receipt of trade acceptances by this representative" in the office of Furst & Furst, witness "would draw a check for the proper amount and deliver it to said representative," and for that service witness "charged a discount of ten per cent;" that witness always examined the indorsement of the Security Ink Manufacturing Corporation in each of these transactions, and that the indorsement on the trade acceptance in this case was the same as the indorsement on all the other trade acceptances purchased by witness from the Security Ink Manufacturing Corporation.

The witness Toby Furst states that he at no time had any reason to suppose that "Mr. Klar" who was introduced to him by Hirschorn as the President of the Security Ink Manufacturing Corporation was not the President of that Corporation. The certificate of stock in the Security Manufacturing Corporation issued to defendant Freels on December 1, 1922, is signed by "B. M. Klar, President," and "H. Krusberg, Secretary." There is nothing in the record which tends to show that "Mr. Klar" who negotiated the sale of the trade acceptances to Furst & Furst was not the President of the Security Ink Manufacturing Corporation, or that he was the same person who, as "E. Klar, Secretary" placed the indorsement of the Security Ink Manufacturing Corporation on the "acceptance" sued on in this case. We find that the negotiations for the sale of the acceptance in question to complainants were conducted, on behalf of the Security Ink Manufacturing Corporation by its President, and the indorsement of the name of the Security Ink Manufacturing Corporation on the back of the acceptance purports to have been placed there by its secretary, but there is no evidence in the record that, as a matter of fact, E. Klar was the secretary of the Security Ink Manufacturing Corporation. However, the signature of the

Security Ink Manufacturing Corporation to the "trade acceptance" in question is "by E. Klar, Sec'y," and by his acceptance thereof the defendant Freels, in effect, admitted that E. Klar was the secretary of the Security Ink Manufacturing Corporation. This follows from the provisions of the Negotiable Instruments Law (Sec. 62—Shan. Code, Sec. 3516a70), which provides that "the acceptor, by accepting the instrument, engages that he will pay it according to the tenor of his acceptance, and admits (1) the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and (2) the existence of the payee and his then capacity to indorse."

Section 19 of the Negotiable Instruments Law (Shan. Code, Sec. 3516a27) provides that "the signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency."

By the great weight of authority the secretary of an ordinary trading corporation has no authority, by virtue of his office, to indorse and transfer commercial paper belonging to his company. See 7 R. C. L., pp. 455-456, Sec. 440, and Annotation, 12 A. L. R., pp. 134-135, and cases there cited. See also Jackson v. Bank, 92 Tenn., 154, 20 S. W., 802; Sewanee Mining Co. v. McCall, 3 Head 619.

Section 23 of the Negotiable Instruments Law (Shan. Code, Sec. 3516a31) provides that "where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

The case of Water Company v. Bank, 123 Tenn., 364, 131 S. W., 477, involved the sufficiency of the indorsement of the Water Company, made by its "cashier," to pass title to checks belonging to the Company. In that case the Supreme Court held that "under the Negotiable Instrument Law, a forged signature and a signature made without authority are put on the same plane insofar as passing title to paper is concerned. Both are wholly inoperative, and neither confer any right to retain the instrument, nor any consequent right to retain the proceeds of the instrument, if collected."

The "trade acceptance" in question was not "negotiated" when it was manually transferred from the Security Ink Manufacturing Corporation to the complainants. It was "payable to order," and therefore could not be "negotiated" except "by the indorsement of the holder completed by delivery." Negotiable Instruments Law, Sec. 30,—Shan. Code, Sec. 3516a38.

And unless there was a valid indorsement by the Security Ink Manufacturing Corporation, the complainant firm is not a holder in due course. Negotiable Instruments Law, Sec. 49,—Shan. Code, Sec. 3516a57.

Although, as before stated, by "accepting the instrument sued on," the defendant Freels admitted the capacity of the Security Ink Manufacturing Corporation to indorse the "acceptance" (Negotiable Instruments Law, Sec. 62, supra), he did not thereby admit the authority of anyone who might thereafter attempt to bind the payee by indorsement, or the validity of any subsequently attempted indorsement.

The defendant expressly denied that the Security Ink Manufacturing Corporation had ever assigned the trade acceptance in question to the complainants. In his answer, he says:

"Defendant specifically pleads non assignavit and says that said trade acceptance was never indorsed over and assigned over to complainants Furst & Furst. He says further that the said E. Klar, Secy, who porports to sign the name of the Security Ink Manufacturing Corporation by himself had no authority to execute said assignment. Defendant denies . . . the right of said E. Klar, Secy, to assign the same to complainants and the fact that said trade acceptance was ever assigned to complainants."

This was sufficient (even in an unsworn answer) to "put the plaintiff to proof of title to the paper sued on." Klyce v. Black, 7 Baxt. 277; Richardson v. Cato, 9 Humph. 464; Oliver v. Bank, 2 Swan 59; Capitol Hill State Bank v. Rawlins National Bank, 24 Wyo., 423, 11 A. L. R., 937; Marks v. Munson, 59 Colo., 440, Anno. Cas. 1917-A, 766, 770; Doty v. Braska, 151 Iowa, 23, Anno. Cas. 1913-A, 193.

The authorities on this question underwent an exhaustive examination by the court in the case of Capitol Hill State Bank v. Rawlins National Bank, supra, and the question is the subject of an elaborate annotation appended to that case in 11 A. L. R., 954, where the Annotator prefaces his digest of the cases with a statement as follows: "In the reported case (Capitol Hill State Bank v. Rawlins Nat. Bank, ante, 937), the alleged indorsement and delivery by the payee, as well as the alleged ownership of the plaintiff, were denied. In this situation, the court holds, and this decision is almost uniformly supported by the authorities, that the genuineness of the indorsement must be proved. In brief, where an issue is raised as to the genuineness of an indorsement by denial thereof, it is necessary for the plaintiff to prove the indorsement."

Of course, we do not hold that the Security Ink Manufacturing Corporation could not have authorized its secretary to indorse ne-

gotiable paper held by it, but we hold that the law does not imply such power from the mere fact that one who attempts to make such indorsement was the secretary of the Corporation, and there is no evidence in this record that E. Klar was so authorized. Under the pleadings, the burden was on the complainants to prove the author- ity of E. Klar, Secretary, to assign and transfer title to the trade acceptance in question by due indorsement, and complainants have not discharged that burden. The appellant's second assignment of error is therefore sustained.

The appellant's third assignment is that "the Chancellor was in error in giving a decree against the defendant J. C. Freels for the amount of said trade acceptance, interest and protest fees, and tax- ing him with the costs, the court having found, and there being no dispute over the fact, that there was an utter failure of considera- tion for said trade acceptance. The court should have, therefore, held that said Furst & Furst stood in the shoes of the Security Ink Manufacturing Corporation, and the bill should have been dismissed at their cost."

In the course of our consideration of appellant's second assign- ment of error, supra, we have held that the Security Ink Manufac- turing Corporation transferred the "trade acceptance" in question to complainants Furst & Furst on November 21, 1923, by manual delivery and for value; but that there is no proof of a valid indorse- ment thereof by the transferer at any time, and that, under the pleadings, the burden was on the complainants to produce such proof.

It is provided by Section 49 of the Negotiable Instruments Law (Shan. Code, Sec. 3516a57) that "where the holder of an instru- ment payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferer. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is ac- tually made."

It follows that the complainant partnership is the "holder" of the trade acceptance upon which it is suing in this case, and is vested with "such title as the transferer had therein," but it is not "a holder in due course;" and "in the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." Negotiable Instruments Law, Sec. 58,—Shan. Code, Sec. 3516a66; Landis v. White, 127 Tenn. 504, 152 S. W., 1031.

The same result follows from the application of other provisions of the Negotiable Instruments Law to the facts of this record. "Ab-

sence or failure of consideration is a matter of defense, as against any person not a holder in due course." (Sec. 28,—Shan. Code, Sec. 3516a36).

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course." (Sec. 59,—Shan. Code, Sec. 3516a67).

We have found that there was a total failure of consideration for the defendant's "acceptance" of the instrument sued on. This fact appearing, the burden was on the complainants to prove that they were holders in due course, that is (among other things), that, at the time the instrument in question was negotiated to them, they had no notice of any infirmity in the instrument or defect in the title of the person negotiating it; and this burden would have rested on the complainants even though they had proved that the indorsement of the Security Ink Manufacturing Corporation had been made by competent authority and in such manner as to pass the legal title to the instrument to the complainants.

The "obligation of the acceptor" (defendant Freels) arose out of "the purchase of goods from the drawer" (the Security Ink Manufacturing Corporation). It is so recited in the body of the instrument upon which complainants are suing. (However, this recital in the instrument did not impose upon the complainants the affirmative duty of ascertaining whether the goods had been delivered to the acceptor, as a condition precedent to their attainment of the status of a holder in due course). The failure of the Security Ink Manufacturing Corporation to deliver the goods purchased from it by defendant Freels constituted an "infirmity" in the trade acceptance, and "defect" in the title of the Security Ink Manufacturing Corporation thereto.

The complainants introduced no evidence in this case except the "trade acceptance" (which was filed as an exhibit to the bill) and the deposition of Toby Furst.

Toby Furst says that he "had personal charge of the entire matter" of the purchase by his firm of the "trade acceptance" here in question. Upon a careful scrutiny of his testimony, we are unable to find therein a statement, either in words or in substance, that at the time he bought said trade acceptance, he did not know that the Security Ink Manufacturing Corporation had not shipped the "goods" to defendant Freels. In other words, all that is stated in the testimony of Toby Furst may be accepted as the truth of the case, and it then be true that he had "knowledge of such facts that his action in taking the instrument amounted to bad faith." (Negotiable Instruments Law, Sec. 56,—Shan. Code, Sec. 3516a64).

It is stated in the brief for complainants (with reference to the testimony of Toby Furst) that, "the witness further states that he did not know and had no notice of the fact that the Security Ink Manufacturing Corporation had failed to make delivery of merchandise sold until after November 21, 1923," and in support of this statement counsel cite page 20 of the transcript. The testimony thus cited does not refer to the trade acceptance sued upon in this case. During the period of approximately four months immediately preceding the purchase by complainants of the trade acceptance here in suit, complainants had bought a large number of small trade acceptances from the Security Ink Manufacturing Corporation, and about thirty of these had been "dishonored." It was of these thirty "dishonored" acceptances that the witness was speaking in the testimony to which counsel refers in that part of complainant's brief above quoted, which testimony (on page 20 of the transcript) is as follows:

"Q. You have testified, if I recall correctly, there were approximately thirty trade acceptances which were dishonored at their places of payment prior to November 21st, 1923. Can you state whether or not any of these trade acceptances became due prior to November 21st, 1923? A. They did.

"Q. You, therefore, had knowledge of the fact that they were dishonored prior to the date of the transaction on November 21st, 1923? A. That's correct.

"Q. I believe you have testified that some of these trade acceptances were dishonored because of the Security Ink Manufacturing Company's failure to deliver merchandise. A. That is not so. My information as to the non-delivery of merchandise came subsequent to November 21st, when the claims were sent to attorneys for collection.

"Q. Do you mean that the defense was not interposed to any of these thirty trade acceptances, or do you mean that you did not learn of that fact until after November 21st, 1923? A. Not until after November 21st, 1923.

"Q. But the defense of non-delivery of merchandise was interposed in some of these thirty trade acceptances? A. It was only interposed in several instances subsequent to November 21st, 1923, when we sent these trade acceptances for collection to various attorneys throughout the country."

The burden was on the complainants to show that they had no actual knowledge of the infirmity in the instrument sued on, or of the defect in the title of the Security Ink Manufacturing Corporation thereto, and that they did not have knowledge of such facts as that their action in taking the instrument amounted to bad faith.

436

Banking Co. v. Hall, 119 Tenn., 548, 566, 108 S. W., 1068. The complainants have not successfully carried this burden, and the defendant's third assignment of error is sustained.

It results that the decree of the chancery court is reversed and the complainants' bill is dismissed. The costs of the cause in the chancery court and on this appeal will be adjudged against the complainants.

If the complainants gave bond for costs upon the institution of the suit in the chancery court, the surety on that bond is subject to judgment, along with the complainants, for the costs of the chancery court and the costs of the appeal. Ogg v. Leinart, 1 Heisk. 40. But we find no such cost bond in the transcript, although all bonds taken in the progress of a cause form a part of the record an appeal. Shan. Code, Sec. 4837.

DeWitt, J., and R. L. Peck, Special J., concur.