JACKSON BROTHERS v. HARPETH NATIONAL BANK et al.

Middle Section.   December 6, 1930.

Wiseman & Todd, of Murfreesboro, for appellants, Jackson Bros.
Wirt Courtney, of Franklin, for appellant, Bank.
J. Connie Covington, of Nashville, for appellees, White et al.

CROWNOVER, J. This is a replevin suit in which the possession of an automobile is involved, and is a contest between the original seller, an assignee of the assignee of the original seller, and a mortgagee of the original purchaser.

Robert Crocker, on August 11, 1928, purchased from Jackson Brothers a Chevrolet coach automobile, under conditional sales contract, for $685.36.

·The General Motors Acceptance Company handled Jackson Brothers' conditional sales contracts and notes for automobiles, and had several plans providing for payments. These requirements had to be complied with before the Acceptance Company would purchase the paper. In sales like the one made to Crocker it required that $400 be paid in cash and that conditional sales contracts for $285.36, payable in seven monthly installments, be executed.

Under date of August 11th, Crocker and Jackson Brothers entered into such conditional sales contract, which stated on its face: "For a total price of $685.36, payable as follows: $400 on or before delivery, leaving a deferred balance of $285.36" etc. No note was executed for the $285.36 and the parties had only the contract. It appears that Crocker paid the $400 (recited in the contract as·paid) as follows: by the delivery of an old automobile at the agreed valuation of $250, and the execution of a title retention note to Jackson Brothers for $150, dated August 11, 1928, due December 1, 1928. This note for $150 was made out on a title retention form of note, giving the name and the number·of the automobile, but the blanks for partial payment clauses were not filled in.

Crocker testified that it was his understanding that it was merely a straight note, but Jackson Brothers testified that it was a title retention note.

Afterwards, on September 20, 1928, Crocker executed a mortgage to the Harpeth National Bank on some of his property, including this automobile, to secure a note of $1790, on which $1000 still remains unpaid. It does not appear for what consideration the note was executed.

Jackson Brothers sold, assigned and guaranteed to the General Motors Acceptance Company the conditional sales contract, showing the receipt of $400 cash and the deferred balance of $285.36, in which contract it was stated:

"The undersigned certifies that said contract arose from the sale of the within described property, warranting that the title to said property was at the time of the sale and is now vested in the undersigned free from all liens and incumbrances; and said property is as represented to the purchaser of said property by the undersigned, and that the statements made by the purchaser of said property on the statement form attached hereto are true to the best of the knowledge and belief of the undersigned.

"For value received, the undersigned does hereby sell, assign and transfer to the General Motors Acceptance Corporation, his, its or their right, title and interest in and to the within contract and the property covered thereby and authorizes said General Motors Acceptance Corporation to do every act and thing necessary to collect and discharge the same."

The $285.36 balance matured about March 1, 1929, and on or about that date Crocker sent to the Acceptance Company his check for the amount with interest. Upon receipt of the check the Acceptance Company mailed the conditional sales contract to Jackson Brothers, who mailed the same to Crocker. But payment of Crocker's check was refused by the bank because of insufficient funds. The Acceptance Company then sent its representative, W. C. Hurley, to see Crocker, who told him that he must pay the amount or he would retake possession of the car. Crocker requested Hurley to meet him at his father-in-law Paul White's place of business. Crocker had a confertnce with White and then called in Hurley. White gave Hurley his check, payable to the Acceptance Company, for $286.75, on which check was written: "for final payment on car." At that time the conditional sales contract was in the possession of Crocker.

White testified that his check was given in the purchase of the conditional sales contract, and that Hurley promised to have the Acceptance Company send a yellow sheet showing the transfer of the contract. Crocker also says that White purchased the title contract. But Hurley says there was nothing said about the purchase or an assignment of the contract. The next day Crocker delivered the contract to White but he continued to use the automobile.

White took the Acceptance Company's letter to Crocker of April 3rd, in which it acknowledged receipt of the final payment, to Jack-

son Brothers and had them to make the following notation on same: "286.75 This note paid by P. E. White April 29, 1929. Jackson Bros., I. S. Jackson."

About May 22, 1929, Crocker Bros. and Robert Crocker filed petitions in bankruptcy and Robert Crocker listed the automobile among his assets. The Harpeth Trust Co. was appointed trustee and took possession of the car. The automobile was afterwards released by the trustee in the bankruptcy proceedings. The Harpeth National Bank was claiming it under its chattel mortgage, and White brought a replevin suit against the Harpeth Trust Co. for the possession of the automobile under an alleged assignment of the original conditional sales contract. This suit was pending, about ready for trial, when Jackson Brothers filed their bill in this cause, seeking to replevin the car under the $150 title retention note and to enjoin all suits for the possession of same.

Defendant Paul White answered, denying that the $150 note was a first lien, and claiming the right of possession of the car under the assignment to him of the conditional sales contract, but he filed no cross-bill.

Defendant Robert Crocker answered, setting up practically the same facts as P. E. White.

The Harpeth National Bank filed its answer as a cross-bill, setting out the facts about its mortgage, denying that P. E. White had purchased said conditional sales contract and had taken an assignment of same, and insisting that White had gratuitously paid the balance due on the car in order to take care of the worthless check issued by his son-in-law, Crocker, and asserting that the payment of the amount to the Acceptance Company extinguished the debt and the lien, and insisting that the lien of its mortgage was a first lien upon the automobile, and praying that the mortgage be declared a first lien and that the automobile be sold under the order of the court in satisfaction of the same.

None of the parties asked for money decree against Crocker.

The Chancellor decreed that the lien of Paul White under the conditional sale contract was prior to any and all other liens on said automobile, and that the lien of the respondent Harpeth National Bank under and pursuant to the chattel mortgage held by it on said car was secondary to said lien of Paul White, and that complainants Jackson Brothers had no lien upon said car and were entitled to no relief, and that respondent Robert Crocker, having been adjudged a bankrupt, was entitled to be discharged from any and all debts due complainants or respondents.

Jackson Brothers and the Harpeth National Bank excepted and appealed to this court, and have assigned errors.

It further appears that all the parties agreed that Jackson Brothers proceed to sell the car at once and turn over the proceeds to the Clerk

& Master to be paid out in accordance with the final decree of the appellate court in this cause.

Appellants Jackson Brothers assigned six errors, which when summarized, are:

(1) That the court erred in holding that the conditional sale contract was assigned to Paul White and that he was entitled to priority.

(2) That the court erred in holding that appellants Jackson Brothers had no lien on said car under the $150 title retention note.

(3) That the court erred in holding that the Harpeth National Bank had a secondary lien upon the said automobile for this debt.

The appellant Harpeth National Bank assigned one error:

That the court erred in holding that the conditional sale contract was assigned to Paul White and that he had a prior lien on the automobile, as the payment made by him was gratuitous and made to take up a worthless check issued by his son-in-law.

1. After an examination of the record we are of the opinion that the first assignment of error made by Jackson Brothers and the assignment made by the Harpeth National Bank, to the effect that the court erred in holding that the conditional sale contract was assigned to Paul White, are not well made and must be overruled. Both White and Crocker testified that White intended to purchase the conditional sale contract, and they say that the agent of the Acceptance Company agreed to send a yellow sheet showing the assignment of the original conditional sale contract to White. Hurley denies this and says no assignment of the contract was contemplated by the parties. There are no other witnesses to the transaction, and we are constrained to hold that White issued his check and paid the amount under agreement that the conditional sale contract would be assigned and transferred to him.

It may be insisted that the assignment must be in writing, and that what writing was had showed that White intended it as a payment of the sale contract for Crocker's benefit. This cannot be true for two reasons: first, because the assignment may be in parol; and, second, because the evidence on the parol assignment does not contradict or vary the terms of the writing.

"A valid equitable assignment of a debt or other chose in action, whether evidenced by a writing or not, may be made by parol." 5 C. J., 900, sec. 65; Box v. Lanier, 112 Tenn., 393, 79 S. W., 1042, 64 L. R. A., 458; Cook v. Shute, Cooke 67; Allison v. Pearce (Tenn. Ch. App.), 59 S. W., 192.

"A debt or chose in action may be assigned for a valuable consideration, by parol, and whatever passes the debt will carry with it the security for its payment. No deed or writing is necessary. A sale and delivery of the note is sufficient." Cleveland v. Martin, 2 Head, 128; Graham v. McCampbell, Meigs, 52, 33 Am. Dec., 126.

"Constructive delivery is sufficient, and any act of the assignor indicating that he relinquishes to the assignee control over the chose in action amounts to a constructive delivery thereof." 5 C. J., 903-4, sec. 69.

A note may. be assigned in parol, without endorsement, by mere delivery alone.

"Where the holder of an instrument transfers it for value, without indorsing it, the transfer vests in the transferee such title as the transferrer had therein, but subject to defenses good against the transferrer; and the failure of consideration is a good defense." Landis v. White Brothers, 127 Tenn., 504, 152 S. W., 1031; Furst v. Freels, 9 Tenn. App., 433.

The assignment of a conditional sale note or contract by the original vendor carries with it the right to the security, and all remedies conferred by law on the original vendor. Wright v. Batchelor Motor Co., 2 Tenn. App., 468; Commercial Credit Co. v. McConkey, 9 Tenn. App., 605; Opinion of this court filed at Nashville in the case of Charlie Delk v. Jamestown Motor Co., Fentress Law, filed August 30, 1930.

"No particular words or particular form of instrument is necessary to effect an equitable assignment. Any language, however informal, if it shows the intention of the owner of the chose in action to transfer it so that it will be the property of the transferee, will amount to an equitable assignment, if sustained by a sufficient consideration, which should be a valuable and not merely a good consideration. . . . An assignment may be by parol." 2 R. C. L., 614-5, sec. 21.

2. Appellants Jackson Brothers' second and third assignments of errors, that the court erred in holding that appellants Jackson Brothers have no lien on the automobile under their $150 title retention note, and that the Harpeth National Bank had a secondary lien upon said automobile, are well made and will be sustained to the extent of holding that Jackson Brothers have a secondary lien on the automobile, subject to White's first lien, which will be· prior to the mortgage of the Harpeth National Bank.

The Jackson Brothers' $150 note expressly retains the title of the automobile as security for the payment of said note, and as between Jackson Brothers and Crocker there can be no doubt that they have a lien on the automobile. The insistence that the $150 note did not retain title because the $285.36 title retention contract stated that $400 had been paid, is not well made. Crocker did not pay the $150, but instead executed this note which expressly retained title, and his testimony that it was not the intention to retain title to the automobile to pay this note, was incompetent, as it varied the express terms of this note. But aside from this proposition, the preponderance of the evidence is for Jackson Brothers in that the note on its face

expressly retained title and they testified to the correctness of that statement.

There is no question of estoppel in the case in so far as the Harpeth National Bank is concerned. The proof shows that the bank took the mortgage on Crocker's property including this automobile to secure a $1790 note, on which $1000 still remains unpaid. The note and the mortgage are not filed in evidence, but it appears from the evidence that Crocker told the bank officials that Jackson Brothers or the General Motors Acceptance Corporation held a title retention note of $285.36 against this car. It is not contended that Jackson Brothers, the General Motors Acceptance Corporation or White made any representations about the matter or that the bank officials ever saw the conditional sale contract held by the General Motors Acceptance Corporation; hence no question of estoppel could arise.

It does not appear from the evidence whether the Harpeth National Bank's $1790 note was executed for a present consideration or for a pre-existing debt. The bank took a mortgage on the equitable interest in the automobile, as the legal title was in the General Motors Acceptance Corporation and Jackson Brothers.

It is alleged in the bank's answer and cross-bill that the mortgage was made to secure Crocker's note of $1790, dated September 20, 1928, and due in ninety days after date, but there is no allegation that the note was for a valuable consideration.

Shannon's Code, sec. 3214, provides:

"All contracts in writing hereafter made and signed by the party to be bound, or his authorized agent and attorney, are prima-facie evidence of a consideration."

It is necessary to allege or aver in the pleadings a consideration for all verbal or written contracts sued on, except negotiable paper; and the burden rests upon the plaintiff to prove a consideration for all verbal contracts, but the burden lies upon the defendant to overthrow the presumption of consideration for all written contracts. The above section makes written contracts prima-facie evidence of a consideration, but does not dispense with the necessity of pleading a consideration for such contracts, except negotiable paper. In this instance it is not even alleged that the $1790 note was negotiable, and it and the mortgage were not filed in evidence. The statute changes the rule of evidence, or burden of proof, but does not change the rule of pleading. Before the enactment of this statute in the Code of 1858, it was not essential to aver a consideration in the declaration in an action on a negotiable instrument, but it was essential to aver consideration in actions on all other unsealed written instruments. The rule that it is not necessary to aver or allege a consideration in a suit on a negotiable instrument, is not affected by the statute, but remains as before. See Shannon's New Code, sec. 3214, Note 4.

. A mortgage executed to secure a pre-existing debt is valid as between the parties and their privies, but is not upon such a consideration as to put the mortgagee in the position of a bona-fide purchaser for value, so as to entitle him to prevail as against the equities arising in favor of third persons, such as the claim of the seller for the purchase price. See 11 C. J., 661; Cook v. Cook, 3 Head, 719.

The party having knowledge in writing of the existence of a title retention contract is put upon notice, and it is his duty to make inquiry of the parties to the contract as to the amount, its conditions and the extent of its terms, and if he does not, the presumption of notice is conclusive. See War Finance Corporation v. Ready, 2 Tenn. App., 67; 21 Am. & Eng. Ency. of Law (2 Ed.), 584, 590; Jones on Chattel Mortgages (5 Ed.), sec. 310.

Hence the bank took it subject to all equities between the original parties.

It results that the second and third assignments of errors must be sustained to the extent that we hold that Jackson Brothers have a lien on said car under the $150 note for its amount with interest, but subject to Paul White's note as hereinabove decreed, which claim of Jackson Brothers is prior to the Harpeth National Bank's mortgage.

It results that the decree of the Chancellor is modified to this extent.

We are of the opinion that the Chancellor erred in holding that Robert Crocker was discharged of all liability on said indebtedness to the parties to this suit, for the reason that he did not plead and prove his discharge in bankruptcy in this case. A discharge in bankruptcy must be specially pleaded and proved. 7 C. J., 414-415, sec. 733-4; In re Nuttall, 201 Fed., 557; Gilbert's Collier on Bankruptcy, p. 411. Hence the Chancellor was in error in holding that Robert Crocker was discharged from all liability, but this cannot affect this suit except as to costs, as the parties did not seek personal money decrees against him.

It appearing that the automobile has been sold by agreement of the parties, and that the proceeds of the sale are in the hands of the Clerk & Master, the cause will be remanded to the Chancery Court of Williamson county for the distribution of the funds in accordance with this decree under proper orders of the Chancellor.

The cost of the cause in the court below is adjudged against Robert Crocker, for the reason that he denied any liability to Jackson Brothers, and one-half of the cost of the appeal is adjudged against Jackson Brothers and the other one-half of the cost of the appeal is adjudged against the Harpeth National Bank. Executions will issue accordingly.

DeWitt, J., and Higgins, Sp. J., concur.