LINDSEY v. PLANTERS WAREHOUSE, Inc., No. 4.—140 S. W. (2d) 803.

Eastern Section.   February 10, 1940.

Certiorari Denied by Supreme Court, April 6, 1940.

E. E. Creswell, of Sevierville, for appellant.

Egerton, Peters, McAfee & Clark, of Knoxville, for appellee.

McAMIS, J.  Homer Lindsey filed the bill herein to recover upon a check in the sum of $87.65 issued by the defendant Planters Warehouse, Inc., payable to the order of H. L. Shultz. The check in question was issued through a mistake and under circumstances to be herein stated. The Chancellor sustained the defense that complainant was not the legal holder and owner of the check but acquired it upon a forged endorsement. The bill was dismissed and the complainant has appealed to this court.

The case was heard below upon oral testimony introduced before the Chancellor who, after hearing all the evidence, found that the payee, H. L. Shultz, had not endorsed the check to complainant nor authorized anyone else to endorse his name thereon and that the proof failed to sustain complainant's insistence that Shultz ratified the endorsement of the check by his daughter and, in any event, that the forged endorsement could not, under the proof, have been ratified until after complainant acquired the check.

The findings of a Chancellor, in a case heard upon oral testimony, are entitled to great weight upon appeal and in this case the Chancellor commented upon the demeanor of at least one of complainant's witnesses while testifying upon a material issue in the case and indicated that, in the opinion of the court, the true facts had not been related.

The facts necessary to be stated are that Shultz placed his tobacco crop on the floor of the defendant Warehouse Company but before the day of sale sold it to a "pinhooker" who paid him for his crop in cash and noted upon the card indicating ownership of the tobacco that it had been sold and transferred to him. On January 9, 1939, the tobacco was sold at auction and brought the amount of the check here in controversy. Through mistake or oversight a check was issued through defendant's office without noting the transfer of the tobacco indicated on the tag and a check on that date was mailed to Shultz, who resided in Sevier County. The check arrived at the Shultz home at about 11 o'clock A. M. on January 10, 1939, while Shultz was away from home. Mrs. Shultz testified that she took the check out of the mail box and called her husband's attention to the check on the following morning. She says her husband directed her or some other member of the family to sign his name to the check and deliver it to complainant to be applied upon his indebtedness. Mr. Shultz, however, denies seeing the check or authorizing anyone to endorse and negotiate it to complainant.

A few days thereafter the check was negotiated and delivered by Mrs. Shultz to complainant and all except $7 applied upon Shultz's account. Complainant paid Mrs. Shultz $7 in cash. The proof

94

shows without dispute that defendant on the following day after the issuance of the check discovered the mistake and wrote complainant calling his attention to this fact and requesting him to return the check to it. Although mailed in the same manner as the check, both Mr. and Mrs. Shultz deny receiving this notice. Not hearing from Mr. Schultz, defendant's manager and its attorney made a trip ot Sevier County to interview complainant and his attorney and, if possible, discover the true facts. The attorney and defendant's manager went to the Shultz home in company with complainant and there interviewed Mr. Shultz in the presence of his wife. Apparently, Mrs. Shultz then learned for the first time that complainant had sold and collected for his tobacco before the issuance of the check in question and was not entitled to cash it. In this conversation Mrs. Shultz readily admitted, according to defendant's manager and its attorney, that she had received the check out of the mail and directed her daughter to endorse it in Shultz's name and that she thereafter took it to complainant's store and turned it over to him, receiving credit and cash in the amount stated. She made no protest when Shultz specifically denied that he had seen the check or authorized anyone to endorse and negotiate it in his behalf. Complainant admits the statement attributed to Mr. Shultz but denies that Mrs. Shultz made any affirmative statement that she was the one who received, endorsed and cashed the check. Complainant does not testify that Mrs. Shultz made any protest in reference to the statement made by Mr. Shultz and, while Mrs. Shultz denies making the statement that she was the one who endorsed and negotiated the check, we do not think, taking the evidence as a whole, that the weight of the proof fails to sustain the finding of the Chancellor in this respect. If this be accepted as the true version of what occurred in the conversation referred to, it is apparent that all of the testimony offered in behalf of complainant is seriously impeached since it would have been most natural for Mrs. Shultz to have stated the true facts when she first learned of the fraud perpetrated by her husband, who admits that he learned of the issuance of the check and that it had been received by Mrs. Shultz on the 10th or 11th.

While Mrs. Shultz doubtless believed she was acting properly in endorsing her husband's name on the check and applying it upon the family indebtedness, we concur in the Chancellor's finding that her endorsement of the check or its endorsement by her daughter was unauthorized and constituted a forgery in the sense that no title passed to complainant. If we are correct in this finding, the question of whether complainant acquired the check for value and in due course of trade becomes immaterial.

Section 7347 of the Code, being Section 23 of the Uniform Negotiable Instruments Act, provides as follows:

"When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, *unless the party against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority.*" (Italics ours.)

In this case the party against whom it is sought to enforce payment of the instrument is not precluded from setting up the forgery or want of authority. If the payee, Shultz, were defendant to this action, the language which we have italicized might become applicable. The defendant had nothing to do with the negotiation of the check to complainant and we think could not be bound by any act constituting an estoppel or ratification on the part of the payee.

Under this section of the Act one who acquires a negotiable paper upon the faith of a forged endorsement acquires no title, such endorsement being wholly inoperative under the statute. State v. Broadway National Bank, 153 Tenn. 113, 115, 282 S. W., 194; Furst & Furst v. Freels, 9 Tenn. App., 423, 424.

"One who obtains possession of a bill or note by means of a forged endorsement acquires no interest in the instrument, although he is ignorant of the forgery, and has no right to enforce its payment against any party to it unless such party is estopped or precluded from setting up the defense of forgery. This is also clearly the effect of the Uniform Act on this point. As a corollary of this rule, therefore, the holder of commercial paper, payable to order, must trace his title to a genuine endorsement, including that of the payee, and one who acts upon the endorsement of negotiable paper must ascertain its genuineness at his peril." 8 Am. Jur., 318, Section 605.

It is insisted in behalf of complainant that defendant was guilty of negligence in issuing a negotiable paper to one to whom it was not indebted, thus putting the check into circulation. We think a sufficient answer to this insistence is that any negligence on the part of defendant in issuing the check was not the proximate cause of complainant's loss. So far as appears, if the forgery had not been committed complainant would not have acquired the check and we think his loss is attributable to the forgery and not to the issuance of the check by defendant. Under the foregoing authorities complainant was under the positive duty of investigating the genuineness of the endorsement on the check before accepting it. If he had done so his loss would have been averted.

We think the Chancellor correctly held complainant not entitled to recover and it results that the assignments are overruled and the decree below affirmed with costs.

Portrum and Ailor, JJ., concur.