DARLING STORES, INC., *v*. FIDELITY-BANKERS TRUST CO.

(*Knoxville*, September Term, 1941.)

Opinion filed November 29, 1941.

GORE & GORE, of Bristol, for appellant.

CURTIN & HAYNES, of Bristol, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

From a decree dismissing its bill on demurrer the complainant has appealed.

The suit was brought to recover the amount of twelve checks drawn by defendant Fidelity-Bankers Trust Company of Knoxville on Park National Bank of Knoxville, cashed by the complainant and an affiliate concern. The checks were made payable to one Edward Wilson, negotiated to complainant and its affiliate, and deposited by complainant or its affiliate in the First National Bank of Bristol. Some time later the checks were returned by the Knoxville bank to the Bristol bank and charged back to complainant and its affiliate by the latter bank.

It appears from the bill that Edward Wilson of Bristol was the beneficiary of a trust which the defendant Trust Company was administering and out of the income from this trust the said trustee would make remittances to Wilson from time to time by its checks all drawn on Park National Bank of Knoxville.

The bill avers that Wilson became insane and was committed to an asylum at Knoxville. No guardian was

appointed for him and the Trust Company continued to send its checks to Wilson after he was placed in the asylum. There appear to have been several of these checks and they were all indorsed "Edward Wilson by Mrs. Wilson," his wife, cashed by complainant, deposited in bank by it and duly paid. These particular checks issued and paid during Wilson's lifetime are not involved in this suit. So far as the record discloses defendant Trust Company has made no demand on Park National Bank respecting such checks.

According to the bill Edward Wilson died in the hospital on March 30, 1937. Thereafter, notwithstanding his death, beginning July 17, 1937, and continuing at intervals until July 17, 1939, defendant Trust Company issued the twelve checks herein involved payable to Edward Wilson. These checks were indorsed "Edward Wilson by Mrs. Wilson" as were those in Wilson's lifetime, cashed by complainant or its affiliate, and deposited in the Bristol bank. They were sent in for collection and duly paid by the Knoxville bank.

In July, 1940, or about a year after the last of these twelve checks was issued and paid, defendant Trust Company appears to have learned of Wilson's death. Taking the position that the indorsement of Wilson's name was unauthorized and equivalent to forgery, and further that Wilson's interest in the trust ceased with his death, defendant Trust Company charged the amount of these checks back to the Knoxville bank. The Knoxville bank charged the amount of the checks back to the Bristol bank, and the latter bank made a similar charge back against complainant and its affiliate.

The complainant sued both banks as well as defendant Trust Company. In this Court complainant is only seeking relief against the Trust Company. Which one of

the three it proceeds against is a matter for the complainant. If the Trust Company wrongfully charged these checks back to the Knoxville bank, that bank wrongfully charged them back to the Bristol bank, and the Bristol bank wrongfully charged them back to complainant and its affiliate. There was a conversion to complainant's damage all down the line for which all parties seem to be liable. At any rate the liability, if any, is clear as against the Trust Company, since it was the beneficiary of these transactions.

A primary inquiry is whether defendant Trust Company had a right to recover from the drawee bank, the Knoxville bank, the amount of the checks involved, paid by that institution. Leaving out of consideration for the moment the death of Wilson, we think the Trust Company would have had no such right.

Attached to each of the twelve checks, on the same sheet of paper, was a receipt to be executed by the payee of the check acknowledging receipt of the check on account of distribution of income from the W. P. Hood trust. Printed on this receipt in two places, in red ink, were the words "do not detach." Each of these receipts was signed, just as the checks were indorsed, "Edward Wilson by Mrs. Wilson."

Obviously it was intended by the Trust Company to use these receipts as vouchers in its settlements. The acceptance of such receipts for so long a time without question was an admission, so far as others were concerned, that Mrs. Wilson was entitled on behalf of Edward Wilson to collect his benefits from the trust.

It is true ordinarily that an agent authorized to collect is not authorized to indorse for his principal a check received in payment of a debt due the principal. *Jackson* v. *National Bank*, 92 Tenn., 154, 20 S. W., 802,

18 L. R. A. 663, 36 Am. St. Rep. 81. It is also true ordinarily that the drawer of checks is under no obligation after they are paid and returned to him by the bank to scan the indorsements to ascertain if they are genuine. *State* v. *Broadway National Bank,* 153 Tenn., 113, 282 S. W., 194; *Figuers* v. *Fly,* 137 Tenn., 358, 193 S. W., 117.

The reason for the latter rule is that a depositor has no greater knowledge as to the bona fides of the indorsement that has the bank. *Welsh* v. *German American Bank,* 73 N. Y., 424, 29 Am. Rep., 175; *Shipman* v. *Bank of State,* 126 N. Y., 318, 27 N. E., 371, 12 L. R. A., 791, 22 Am. St. Rep., 821. There are exceptions to this rule and particular circumstances may make it a question of fact as to whether the depositor was not guilty of negligence in failing to examine indorsements on his returned checks. *Prudential Insurance Co.* v. *National Bank of Commerce,* 227 N. Y., 510, 125 N. E., 824, 15 A. L. R., 146.

██ ██ Had the instruments paid by the Knoxville bank been nothing more than checks, it may be conceded, nothing else appearing, that defendant Trust Company was under no duty of examining the indorsements thereon. A check and a receipt, however, were combined in each of these instruments. Defendant Trust Company was clearly under a duty to ascertain that the receipts which is proposed to retain or use as vouchers were genuine. A trustee at its peril must make payments with which it is charged to the proper beneficiary. A trustee must determine the identity of the beneficiary at its own risk. Bogert on Trusts, Vol. 4, section 814, p. 2363; Scott on Trusts, Vol. 2, Sec. 226.

Each of the receipts, as we have pointed out, was signed "Edward Wilson by Mrs. Wilson" just as each of the checks were indorsed. The receipts and the checks each being printed on a single sheet, a casual examination

would have disclosed the manner in which the checks were indorsed.

According to the bill before Wilson's death, checks were issued to him like those here involved and were indorsed just as the twelve checks in controversy were indorsed. At the time, therefore, that the first of the twelve checks was presented to the drawee bank for payment, it seems to us that the bank was justified by the silence of the Trust Company in concluding that Mrs. Wilson had a right to execute these receipts and indorse these checks on behalf of her husband. It could not have escaped the notice of the Trust Company that she was doing both these things.

Had the indorsement of Wilson's name on these checks been an outright forgery, a duty would have rested upon the Trust Company when it ascertained this fact to give notice to the bank thereof to prevent loss by the bank on account of like forgeries thereafter.

"When a depositor fails to warn his bank of forgeries committed, after discovery thereof should have been made by him, his neglect is a primary cause contributing to the loss incurred by the bank, when it pays out moneys upon checks similiarly forged which are subsequently presented." *National Surety Co.* v. *President, etc., of Manhattan Co.*, 252 N. Y., 247, 169 N. E., 372, 377, 67 A. L. R., 1113.

We are of opinion that it was the duty of defendant Trust Company, if it intended thereafter to challenge the authority of Mrs. Wilson to indorse her husband's name, promptly after it discovered that she was so doing, to advise the bank of such intention. We are satisfied, under the circumstances heretofore detailed, defendant Trust Company did know that Wilson's name was being indorsed by his wife on all these checks.

■ Since the Trust Company has made no claim against the drawee bank for reimbursement on account of the checks paid during Wilson's lifetime, we may construe such course as an admission that Mrs. Wilson had authority to indorse for him prior to her husband's death.

■ Since all the checks of which we have treated were written and handled in the same way by the same parties, any estoppel running against the Trust Company in favor of the Knoxville bank would likewise run in favor of the Bristol bank and in favor of complainant.

■ This brings us to the death of Wilson. As a general thing, of course death terminates any existing agency, but we have to consider as bearing on this case certain sections of the Negotiable Instruments Law, namely, Section 9(3) (Code, section 7333(3)), and Section 61 (Code, section 7385).

N. I. L., Section 9(3):

"The instrument is payable to bearer: . . . when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable."

N. I. L., Section 61:

"The drawer by drawing the instrument admits the existence of the payee and his then capacity to endorse; and engages that on due presentment the instrument will be accepted or paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it. But the drawer may insert in the instrument an express stipulation negativing or limiting his own liability to the holder."

It is not easy to harmonize these two sections of the Negotiable Instruments Law.

Section 61 seems to preclude the drawer from denying the existence of the payee named in a check drawn by him.

On the other hand, the implication of Section 9(3) is that the drawer who is ignorant of the nonexistence of the payee named puts out an instrument that can not be negotiated. It is not payable to bearer and the payee being nonexistent there can be no valid indorsement.

The apparent discord between these two sections of the Negotiable Instruments Law has been considered, so far as we know, by only two courts of last resort, The Supreme Court of Iowa in *McCornack* v. *Central State Bank,* 203 Iowa, 833, 211 N. W., 542, 52 A. L. R., 1297, and *Robertson Banking Co.* v. *Brasfield,* 202 Ala., 167, 79 So., 651. Each Court was sharply divided on the construction given these sections of the statute and elaborate opinions were filed by the majority and minority Justices.

In both these cases checks were drawn to the order of fictitious payees. In both instances the drawers were ignorant that the payees were fictitious, and in each instance the drawer was acquitted in the majority opinion of any negligence. In both cases the drawee banks were held liable to the drawers for the money paid out on the checks.

The Iowa decision seemed to rest largely on the Court's conclusion that the provisions of Section 61 did not run in favor of the drawee. Granting this, it would still not advantage the drawer even though the check after payment be regarded as functus officio. The drawee responding to the drawer could recover the amount of the check as for money had and received from its indorser. *State* v. *Broadway National Bank, supra; Figuers* v. *Fly,*

*supra.* The indorser could have a like recovery against the drawer if we give any effect to the provision of Section 61 that the drawer "admits the existence of the payee and his then capacity to endorse."

The Alabama Court disclaimed an intent to harmonize Section 61 and Section 9(3), but said that Section 61 did not make the drawer admit that anyone other than the named payee could properly and legally indorse the check. It follows that no one could legally indorse the name of the fictitious· payee and therefore the drawee bank paying a check so indorsed would be liable to the drawer just as if it had paid on forged indorsement.

It is thus obvious that these decisions deprive Section 61 of any practical effect in a case where the drawer is ignorant that the payee is fictitious or nonexistent. This is true because under Section 9(3), if the drawer knew that the payee was fictitious or nonexistent, the check would be payable to bearer, otherwise, not negotiable. Section 61 can have no greater effect under the decisions to which we have referred, at least in cases where the drawer is guilty of no negligence in issuing the check to a fictitious or nonexistent payee.

Since both the Alabama Court and the Iowa Court in the majority opinions emphasized the fact that the drawers of the instruments involved were free from negligence, we think we may take the case before us out of the authority of those decisions. In our opinion, there can be little controversy about the negligence of defendant Trust Company in issuing the checks involved in this suit.

▮▮▮▮ The administration of a trust is not a mechanical function. Care and prudence are exacted of a trustee and the courts will not tolerate indifference on the part of a trustee to the interests of the beneficiary or to the preservation of the trust fund. We have here-

tofore pointed out that a trustee disburses the fund in his hands at his peril and he will not be protected in payments made to persons not authorized to receive the same. If a third party assumes to represent a beneficiary and execute a receipt for payments on behalf of a beneficiary, it is the duty of a trustee to inquire into the authority of such third person. Likewise we think it is the duty of a trustee to exercise care in keeping up with the beneficiary of a trust and if by the exercise of ordinary care a trustee could have learned of the insanity or of the death of the beneficiary, such trustee will not be protected in unauthorized payments on account of such beneficiary after his death or insanity.

For a trustee to issue checks to a beneficiary after the latter has been placed in an insane asylum located in the same city with the trustee, and for that trustee to continue issuing checks to that beneficiary (just as if he were alive) two years after the beneficiary's death, seems to us distinctly negligent conduct.

We think that when the first of these voucher-checks was returned to defendant trustee by its bank, the trustee should have made an investigation to ascertain the authority of "Mrs. Wilson" to receipt and indorse for "Edward Wilson." Such an investigation would have disclosed the whole situation and avoided subsequent losses to any of the parties here concerned.

Being of opinion that defendant trustee was culpably negligent in issuing the twelve checks to a nonexistent person, we think it proper to apply the provisions of Section 61 of the Negotiable Instruments Law and hold this trustee estopped from denying "the existence of the payee and his then capacity to endorse." In other words, to treat the checks as though they were payable to bearer, treating negligent ignorance of the nonexistence of the

payee as equivalent to knowledge of the nonexistence of the payee, in which latter event the checks would be payable to bearer under Section 9(3) of the Negotiable Instruments Law. The checks being payable to bearer, fictitious or forged indorsements would be immaterial, and defendant trustee had no right to recover the amount paid out on said checks by the drawee bank.

Ordinarily it is essential to the application of an estoppel *in pais* for the party against whom the estoppel is invoked to have had knowledge of the facts. This Court, however, in a number of cases has recognized that this rule is not applicable where the person sought to be estopped has been guilty of culpable negligence in failing to acquire such knowledge. *Smith* v. *Cross*, 125 Tenn., 159, 176, 140 S. W., 1060, and cases cited. Or that the party sought to be estopped "should have had the means at hand of knowing all the facts or have been in such position that he ought to have known them." 19 Am. Jur., 648.

Counsel for defendant trustee rely on the case of *Lindsey* v. *Planters Warehouse,* 24 Tenn. App., 92, 140 S. W. (2d), 803, as controlling here. That was a case in which one who had cashed a check negligently issued on a forged indorsement defended a suit brought by the drawer on the theory that the latter was precluded by its negligence from recovery against him under Section 23 of the Negotiable Instruments Law (Code, section 7347). Only one check was involved and the court found the defendant cashing the forged check had been guilty of negligence and that his negligence rather than the negligence of the drawer was the proximate cause of the loss.

In the case before us, in view of the conduct of defendant trustee which we have set out in detail, we

do not think the Knoxville bank nor the Bristol bank nor the complainant was guilty of negligence. They could not be expected to know Wilson was dead.

Something is said about the hardship that would be imposed on a corporate trustee administering many trusts if it were required to keep up with the beneficiaries of all the trusts handled by it. We are not impressed by this argument. This class of institutions, as we have heretofore noted (*Old National Bank* v. *Swearingen,* 167 Tenn., 529, 72 S. W. (2d), 545), constantly advertises the superior qualifications and stability of corporate trustees and seek business in that capacity. They should not be encouraged to undertake the administration of more trusts than they can administer with ordinary care.

It follows that the decree of the chancellor will be reversed and a decree entered here for the complainant.